PEOPLE v. WALLACE.

1. ARREST—INTOXICATING LIQUOR—SEARCHES AND SEIZURES—EVIDENCE.

Where an officer about midnight saw a heavily loaded truck arrive in the city answering the description of one which he had been informed by two men would arrive at about that time loaded with intoxicating liquor, and, on questioning, the driver failed to give a reasonable account of his movements, the officer was justified in arresting the driver and searching the truck, and the liquor so obtained was admissible against him on his trial for violating the prohibition law.

2. CRIMINAL LAW—RIGHT TO IMPOSE COSTS IS STATUTORY.

The right of the court to impose costs in a criminal case is statutory.

3. SAME—COSTS IMPOSED SHOULD BEAR REASONABLE RELATION TO EXPENSE INCURRED.

On conviction of violating the prohibition law (Act No. 338, Pub. Acts 1917), the costs imposed under section 51 must bear some reasonable relation to the expense actually incurred in the prosecution, which amount should be determined by the court and stated in the judgment.

4. SAME—EVIDENCE—JUDICIAL NOTICE—EXCESSIVE COSTS.

Where defendant, in a prosecution for violating the prohibition law, waived a jury, the trial was brief, and the entire record consists of only 21 pages, the Supreme Court may take judicial notice that $250 imposed as costs under section 51, Act No. 338, Pub. Acts 1917, is excessive, and the case is remanded to the trial court with direction to determine the reasonable amount thereof, in view of actual expense incurred in prosecution.

Error to Van Buren; Warner (Glenn E.), J. Submitted October 11, 1928. (Docket No. 124, Calendar No. 33,754.) Decided January 7, 1929.

As to legality of arrest without a warrant on suspicion of violation of intoxicating liquor laws, see annotation in 44 A. L. R. 149.

Joseph F. Wallace was convicted of violating the liquor law. Affirmed.

*W. J. Barnard,* for appellant.

*Wilber M. Brucker,* Attorney General, and *Robert H. Cavanaugh,* Prosecuting Attorney, for the people.

McDONALD, J. The defendant was arrested about midnight on May 28, 1927, while driving a Reo speedwagon loaded with intoxicating liquor through the city of South Haven, Michigan. After the arrest, which was made without a warrant, the truck was searched and found to contain 100 cases of Canadian ale and 100 cases of beer. He was put on trial under an information charging him with the possession and transportation of intoxicating liquor. A motion was made to suppress the evidence on the ground that it was obtained by an unlawful arrest and search. The motion was denied. The trial resulted in a judgment of conviction, which the defendant here reviews on a writ of error.

The record presents the single question as to the validity of the arrest. A few hours before the arrest, the chief of police of the city of South Haven received information that a man driving a Reo speedwagon with an inclosed body, on the side of which was painted the words "Universal Film Exchange," and which carried an Ohio license number 18223, would arrive in South Haven about midnight loaded with liquor. This information was received by the chief in a conversation with two men who were unknown to him and who did not give their names. Taking another officer with him, the chief watched until about midnight, when he saw the defendant drive into the city with a truck such as the men had described. After following him for a short time, the officers stopped the defendant and questioned

him. The chief of police testified to the conversation as follows:

"I asked him where he was going, and he said, 'St. Joe and Benton Harbor.' I asked him what he was hauling and he said, 'Films for theatres.' I asked him where he got the films, and he said he was bringing them from Grand Rapids, and I asked then where his next delivery was to be made; he said, 'In the theatres of St. Joe and Benton Harbor,' and I asked him to tell me the name of the theatre he was supposed to deliver those films to; he was unable to do that. He said he didn't remember the names but he would know the places when he saw them. I asked if his employers didn't give him a list of the films and names of places where they were to go, and if he had it, I would like to see it. He said that he had no such list. Just had to remember the places where he was supposed to take those films. I then told him I was suspicious of his load; that it was a mighty heavy load for films. I then told him that after placing him under arrest that I would look at his load. I asked him how he opened up the truck; he said, 'By opening the door in the rear.' He jumped out and came around to assist me in opening the door. In opening the door, I saw the truck was loaded nearly to the top with sacks and cases."

The question is whether the information he received, together with his observation of the truck and the conduct of the defendant as disclosed by his conversation, was sufficient to raise a reasonable belief in the mind of the officer that intoxicating liquor was being unlawfully possessed and transported in his presence.

Instances quite similar to this have been before this court frequently. The rule which we have followed was well stated by Mr. Justice Sharpe in *People* v. *Kamhout*, 227 Mich. 172, as follows:

"What we do state to be the rule by which this court will be governed is, that if an officer, charged with the enforcement of the law, from the exercise of his own senses, or acting upon information received from sources apparently so reliable that a prudent and careful person, having due regard for the rights of others, would act thereon, has reasonable and probable cause to believe that intoxicating liquor is being unlawfully transported in an automobile in his presence, he may arrest the offender or search for and, if found, seize the contraband therein."

In the instant case the information which the officer received did not come to him indirectly. The men came to him. He saw them, talked to them, and had opportunity to judge of their dependability. But there were other facts and circumstances that confirmed the officer's belief that the information which he had received was reasonably trustworthy. He followed the truck, saw that it was "riding heavy," as he termed it, heavier than it would have ridden had it been loaded with films; and he talked with the defendant, who failed to give a reasonable account of his movements. These facts, together with the information received from the two men, were sufficient to create an honest belief in the mind of the officer that the defendant was violating the law. As the arrest was legal, the officer had a right to search for and seize the liquor found in defendant's possession.

Counsel for the defendant complains that in the sentence imposed the court arbitrarily assessed costs of $250 in addition to a fine and imprisonment. The right of the court to impose costs in a criminal case is statutory. The so-called prohibitory liquor law, Act No. 338, Pub. Acts 1917, § 51 (Comp. Laws Supp. 1922, § 7079[51]), provides that on conviction for a first offense the sentence shall include the

"costs of prosecution." It is not necessary that these costs shall be taxed by the clerk as in civil cases. The better practice is for the court to determine the amount and state it in the judgment. *In re Johnson*, 104 Mich. 343. But the costs imposed must bear some reasonable relation to the expenses actually incurred in the prosecution. In this case, they clearly do not. The defendant waived a jury. The trial was brief. The entire record consists of 21 pages. In view of these facts, we may take judicial notice that the $250 imposed is far in excess of the actual costs of the prosecution.

The judgment of conviction is affirmed, and when the case is remanded the trial court is directed to determine the costs in accordance with the above suggestions.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.