## Ex parte COFFELT.

No. A-11450.  Feb. 21, 1951.

(228 P. 2d 199.)

Paul W. Updegraff, Norman, for petitioner.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for respondent.

BRETT, P. J. This is an original action in habeas corpus by Charles Eugene Coffelt as petitioner. He alleges in his petition that he is being unlawfully restrained of his liberty in the county jail of Cleveland county, Oklahoma, by the Honorable Jess Jack, sheriff thereof. He alleges that he was arrested and charged with the offense of unlawfully passing a car in a plainly marked no-passing zone. To the charge as alleged in the complaint, the petitioner pleaded guilty and was fined $5 and costs in the sum of $9.50. Included in the costs was a charge of $1 to be paid into the State Treasury into a fund known as the Parole Fund, said moneys being appropriated to the Pardon and Parole Board to be used for defraying salaries and expenses of the Pardon and Parole Officer and his assistants. The petitioner paid the fine and regular costs, but refused to pay the $1 assessed for the Parole Fund; upon this refusal so to do he was taken into custody. A rule to show cause was immediately thereafter issued herein and the petitioner released on bond.

The sole question involved in this proceeding is the legality and constitutionality of House Bill No. 492, 1949 Session Laws, page 384, 57 O.S. Supp. §§ 361 to 364 inclusive. The pertinent part of said House Bill No. 492 is § 1, which reads as follows, to wit:

"From and after the effective date of this Act, each Justice of the Peace, Superior Court, Court of Common

Pleas, District Court, and any other Court of record, within the State of Oklahoma, shall, upon the conviction of any person, firm or corporation, for the violation of any State law, whether the same be a misdemeanor or felony, in addition to all other Court costs, assess the additional sum of One Dollar ($1.00) costs against the defendant, which sum shall be collected as all other Court costs are collected and transmitted quarter-annually by the various Court Clerks for all Courts of record, and by the County Treasurers for all Justice of the Peace Courts, to the State Treasurer, who shall deposit the same in a special fund designated as 'The Parole Fund'. The Parole Fund, as the same accrues, is hereby appropriated to the Pardon and Parole Board, without fiscal year limitation, for its use in defraying the salaries and expenses of the Pardon and Parole Officer and his assistants. The State Parole Fund shall be revolving and nonfiscal and payments therefrom shall be made in the same manner as payments are made from other appropriations to the Pardon and Parole Board, or Pardon and Parole Officer."

Petitioner's first contention is that the charge of the $1 costs against the defendant in a criminal case to the support of the Parole Fund cannot logically be considered as a proper item of costs in such an action. While there is a paucity of authority on this question, we believe the weight thereof and the better reasoned cases sustain the proposition that costs taxed in a criminal proceeding must bear a true relation to the expenses of the prosecution. 20 C.J.S., Costs, § 453, page 694, reads as follows:

"The term costs ordinarily includes only items connected with the actual presentation of testimony and the fees of specified officers, and the courts are reluctant to extend the term beyond its accepted meaning."

And 20 C.J.S., Costs, § 454, page 694, reads as follows:

"Costs must bear a true relation to the expenses of the prosecution, * * *."

Also 15 C.J. 330, § 823. In People v. Wallace, 245 Mich. 310, 222 N. W. 698, 699, it was said:

"The costs imposed must bear some reasonable relation to the expenses actually incurred in the prosecution."

People v. Davis, 247 Mich. 672, 226 N.W. 671; People v. Robinson, 253 Mich. 507, 235 N.W. 236:

"Costs are expenses incident to a prosecution, and not inclusive of any of the expenses of holding required terms of the circuit court * * *."

People v. Hope, 297 Mich. 115, 297 N.W. 206, 208. In City of Carterville v. Cardwell, 152 Mo. App. 32, 132 S.W. 745, 746, the Springfield Court of Appeals observed:

"Costs in criminal proceedings are those charges fixed by law which have been necessarily incurred in the prosecution of one charged with a public offense as compensation to the officers for their services."

The courts have been so eager to accord persons in criminal cases trials free from unnecessary burdens, in the matter of costs, Bowen v. State, 98 Ala. 83, 12 So. 808, that they have held only costs incurred in accusations establishing guilt, as taxable against a defendant, and not those proven groundless, State v. Ellvin, 51 Kan. 784, 33 P. 547. In re Gilson, 34 Kan. 641, 9 P. 763, it was held where an attempt was made to establish felonious assault and only assault and battery was proven, the costs incident to the attempt to establish felonious assault incurred in subpoenaing witnesses to prove the same, could not be taxed against the defendant. Biester v. State, 65 Neb. 276, 91 N.W. 416, 417, it was said:

"There is, it seems to us, neither reason nor justice in imposing on a person who has committed a misdemean-

or the expense incurred by the state in a futile effort to convict him of a felony. The costs of prosecution contemplated by the statute are, in our judgment, the costs incurred in establishing guilt, in proving a specific charge, not those made in connection with a false accusation—a charge that is disproved and shown to be groundless."

These cases are illustrative of the extent to which the courts extend a protecting arm around criminal trials to protect the guaranty under constitutional government as expressly provided in our Constitution, Art. 2, § 6:

"The courts of justice of the State shall be open to every person, * * * and right and justice shall be administered without sale, denial, delay, or prejudice". It clearly appears that costs in a criminal action must be for services then rendered in connection with the prosecution and trial thereof. In Ex parte Carson, 143 Tex. Cr. R. 498, 159 S.W. 2d 126, 127, the Court of Criminal Appeals of Texas had an analogous situation to decide. The question therein involved the validity of $1 costs taxed in a criminal case to go into a fund known as the Library Fund to support county libraries to be used in the trial of cases. Therein this attempted taxation of costs for that purpose was held unconstitutional. In so holding the court after pointing out the conflicting decisions in other jurisdictions, said: "The reasoning in both lines of decisions appear to us to be more or less based upon an arbitrary conclusion and for that reason are not quoted. On one side the courts take the view that the costs may be taxed as a proper item because the money is used in the establishment and maintenance of a law library which, it is stated, is a legitimate charge on the litigants. We find ourselves unable to accept that view. Such reasoning would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to

us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend. Many other illustrations might be used appropriately to show the fallacy of such contention and the inevitable result that litigation in the courts would be prohibitive. We, therefore, conclude, as several states have, that the tax imposed by the bill is not and cannot be logically considered a proper item of costs in litigation, particularly in criminal cases."

It occurs to us that certainly books in a library bear a greater relation as a proper item of costs to a prosecution than would services not appertaining in any way to the proceeding in which the costs were levied. The use of the law books might prove to be a necessary incident, by way of enlightenment, to the administration of justice but by no stretch of logic can such be said of the situation in the case at bar. Herein, we are asked to include as services incident to the trial, charges for anticipatory services or charges as costs for services not then rendered, or for expenses not yet incurred, in aid of prosecution. That is precisely what we are asked to do if we sustain the statute herein in question. For here only upon conviction or at the termination of the trial does the defendant become charged with the $1 costs for the Pardon and Parole Fund, in fact at the very point when the defendant ceases to be a charge of the judiciary and becomes in custodia legis a charge of the executive branch of the government. Through this fiat of taxation the Legislature seeks to collect under the guise of costs a tax for the maintenance of the Pardon and Parole officer and his assistants. Such an attempt clearly violates the fundamentals of the division of powers. It is an attempt to make the courts discharge the function of the executive branch of the government and

use them as a tax-gathering agency, and appropriate the moneys thus collected for the maintenance of a branch of the executive department of government. It is a veiled effort to pervert the high functions of the courts, infringe upon their sacred responsibility in the administration of justice only, and make of them a collecting agency for the executive branch of the government. We repeat again by no stretch of the imagination can such be said to be incident to the prosecution or trial of a criminal case. If such tax can be collected as costs for such a purpose, there is no end to which this method might be pursued. If money can thus be collected for the salary and expenses of the Pardon and Parole officer, why not to pay the salary of the Governor since he is vested with the pardon and parole power. Why may not such a method be pursued to raise money with which to pay the Governor's secretary who prepares the parole papers? Why may not money be thus raised in this manner to pay the per diem and expenses of the Pardon and Parole Board, and on ad infinitum? Such costs might be so multiplied that justice would be open only to those who could afford the costs or were in fact in a position to buy such services of their government. One does not have to be a seer or possessed of the wisdom of Solomon to observe that justice through the process of trials would be denied to those who could not afford to stand trial and run the risk of being jailed, upon their failure to pay ever mounting costs, taxed in the courts to maintain services not incident to the trials had therein. Certainly it cannot be contended that such a tendency if unchecked would create insurmountable prejudices against those who could not afford to submit to a trial because they could not afford to pay the costs incident thereto. The very idea of such is repugnant to the American con-

cept that the "Courts of justice of the State shall be open to every person", who seeks a judicial hearing, Art. 2, § 6, Bill of Rights, Constitution. The function of the judiciary is primarily, to administer justice. It is one of the co-equal branches of the government. The fees .it may collect are only those necessarily incident to the administration of justice. It is not to be reduced to the role of a tax-gatherer for the executive branch of the government. To permit such would reduce the courts to a subordinate branch of the government, and pervert its position of co-equality with the legislative and executive departments. In reaching this conclusion, we find ourselves out of step with the modern trend, toward a too often disregard by legislative bodies of the efficacy of the division of governmental powers. Now in the interest of so-called expedition, legislative bodies seek to attain administratively those ends that should be determined judicially; and what should be attained executively is sought to be reached judicially. Even those things that rightfully belong to legislative bodies we find are delegated to executive agencies for determination. Hence most commonly, we now find the powers of all three departments merged in one administrative body vested with power to make its own laws, promulgated through the prescription of its own rules and regulations, with the sole power of interpretation of its own acts, executing its decrees with the abandon of a boondogling buccaneer. In such agencies we substitute for checks and balances a government of men, and subject ourselves to the arbitrary will, whim, or caprice of the everchanging moods of men, to the abandonment of unchanging principles of law. Such tendencies portend evil to the rights of men. We are not inclined to lend even the slightest aid to this trend ignor-

ing the fundamental division of powers; and certainly not, where the courts are concerned  The courts are not ancillary to or an adjunct of any other department. They are primarily interested in the free and untrammeled administration of justice.  Certainly they should not be degraded to the level of a flunky for the executive or any other department.  Separation of governmental powers is the essence of the life of freedom.  Every time we take a deep breath of free men's atmosphere, we should remember its perpetuity depends upon the division of governmental powers.  We shall do our part to prevent a perversion of the object of the creation of the judiciary.

In light of the foregoing we conclude that the $1 in criminal cases as costs for the Parole Fund is not a proper item to be charged against the defendant in the trial of criminal cases since the same does not constitute a necessary expense incident to the prosecution and trial of criminal cases, and for the further reason that the same is repugnant to the division of powers as provided in the Constitution and the spirit of the Bill of Rights. In our opinion House Bill No. 492, Session Laws 1949, is therefore void.  For all the above and foregoing reasons the writ of habeas corpus herein prayed for is accordingly granted, and the petitioner's discharge from custody is hereby forthwith ordered.

JONES and POWELL, JJ., concur.