PEOPLE v. BARBER

1. COSTS—CRIMINAL CASE—RELATIONSHIP TO COSTS OF PROSECUTION.
   Costs, to be properly taxable as incident to the prosecution of criminal charges, must bear some direct relation to actual costs incurred in such prosecutions.

2. CONSTITUTIONAL LAW—STATUTES—REVIEW BY COURTS.
   The conflict between a statute and constitutional provisions must be clear and inevitable before a statute will be struck down as unconstitutional.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4]  20 Am Jur 2d, Costs §§ 108, 109.
[2]  16 Am Jur 2d, Constitutional Law § 101.
[3]  16 Am Jur 2d, Constitutional Law § 103.
[5]  50 Am Jur, Statutes §§ 159, 160, 164–166.
[6]  20 Am Jur 2d, Costs §§ 100, 108, 109.

3. SAME—STATUTES—REVIEW BY COURTS—LEGISLATIVE LABELS.

Legislative labeling cannot preclude judicial determination, or excuse a court from its responsibility to give realistic construction to terms employed in statutes; therefore statutory reference to a levy as "costs" does not necessarily mean that the levy does represent costs.

4. COSTS—CRIMINAL CASE—RELATIONSHIP TO COSTS OF PROSECUTION —DISCRETION OF TRIAL COURT.

A statutory assessment, amounting to 10% of fines levied by the trial judge, the amounts of which depend on the discretion of the trial judge, bears no reasonably direct relation to the costs of prosecution of a criminal defendant, and therefore cannot be deemed to be "costs" (CL 1948, § 28.613, as added by PA 1965, No 203).

5. CONSTITUTIONAL LAW—STATUTES—LIMITATIONS ON INCLUDABILITY OF SUBJECT MATTER.

The constitutional requirement that no statute shall embrace more than one subject, which shall be expressed in its title, does not bar the enactment of a statute encompassing broadly related purposes as long as nothing incongruous to the object of the statute is inserted among the provisions (Const 1963, art 4, § 24).

6. COSTS—VALIDITY OF STATUTE—LEVY OF COSTS—LEVY OF FINES— RELATIONSHIP OF COSTS LEVIED TO COSTS OF PROSECUTION—ALLOCATION OF MONEY COLLECTED FROM FINES.

Statute which levies as additional "costs" 10% of fines imposed for violation of designated penal laws, with such "costs" to go to support the law enforcement officers' training fund *held*, invalid, since it bears no real relationship to the actual costs of prosecution for the offenses in question; it is a levy not of costs but rather of a supplemental fine, and thus violates the constitutional requirement that all fines assessed for the breach of the penal laws of this State shall be used exclusively for the support of designated libraries (CL 1948, § 28.613, as added by PA 1965, No 203; Const 1963, art 8, § 9).

Appeal from Eaton, McDonald (Archie D.), J. Submitted Division 3 January 9, 1968, at Grand Rapids. (Docket No. 3,083.) Decided November 29, 1968.

Gerald Richard Barber was convicted of wilful destruction of police property, and a fine was imposed. The people moved for imposition of the 10% assessment prescribed by § 13, PA 1965, No 203. Motion denied, and statutory provision declared unconstitutional. The people appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert C. Goussy,* Assistant Attorney General, for the people.

*Amicus Curiae:* George W. Watson.

NEAL E. FITZGERALD, J. The attorney general appeals the decision of the circuit court that § 13, PA 1965, No 203 violates the Constitution of the State of Michigan. PA 1965, No 203 has created the law enforcement officers training council. Section 13 of the Act provides:

"Sec. 13. (1) There is hereby created in the state treasury a law enforcement officers training fund, from which the legislature shall appropriate such sums as are deemed necessary for the purposes of this act.

"(2) *On and after the effective date of this act, there shall be levied an assessment as additional cost in an amount equal to 10% of every fine, penalty and forfeiture imposed and collected by the courts for criminal offenses, other than a fine, penalty or forfeiture for a violation of the Michigan vehicle code or any local ordinance relating to stopping, parking or operation of a vehicle, and other than for a violation of the conservation laws. When a fine is suspended, in whole or in part, the assessment shall be reduced in proportion to the suspension.*

"(3) After a determination by the court of the amount due, the clerk of the court shall collect the

same and transmit it to the county treasurer, who shall transmit it to the state treasurer to be deposited in the law enforcement officers training fund. The transmission to the state treasurer shall be in the same manner as fines collected for the state by the county."[1]   (Emphasis supplied.)

We concur with the circuit judge who concluded that paragraph 2 of § 13 violates article 8, section 9, of the Constitution of 1963 of the State of Michigan, providing in pertinent part:

"All fines assessed and collected in the several counties, townships and cities for any breach of the penal laws shall be *exclusively* applied to the support of such public libraries, and county law libraries as provided by law."[2]   (Emphasis supplied.)

The defendant, Gerald Barber, while remonstrating with a police officer who had taken him to the station house in Eaton Rapids for questioning on a charge of disorderly conduct, brought his fist down onto the keys of a typewriter belonging to the Eaton Rapids police department. The defendant pleaded guilty before the circuit court of Eaton county to a charge of wilful destruction of police property.[3] Judge McDonald placed the defendant on probation for two years, imposed a fine of $50 and costs of $25, and ordered the defendant to make restitution to the police department of Eaton Rapids in the amount of $31.30, the cost of repairing the damaged typewriter.

On the day of sentencing, April 4, 1966, assistant attorney general Robert Goussy filed an appearance

[1] CL 1948, § 28.613 as added by PA 1965, No 203 (Stat Ann 1968 Cum Supp § 4.450[13]).

[2] This provision is carried forward from the Constitution of 1908, art 11, § 14.   Comment of the Constitutional Convention of 1961: "Penal fines for support of libraries are continued."   2 Official Record, Constitutional Convention 1961, p 3397.

[3] CL 1948, § 750.377b (Stat Ann 1954 Rev § 28.609[2]).

on behalf of the people, intervening for the purpose of moving the court to impose the 10% assessment prescribed by § 13, PA 1965, No 203; the act had taken effect on January 1, 1966. The operation of § 13 would have required the trial court to assess the defendant an additional 10% of the fine imposed, $5, an amount which the circuit court clerk would then have transmitted for deposit in the law enforcement officers training fund, created by paragraph 1 of § 13. The circuit court took the motion under advisement, and then, on October 19, 1966, handed down an opinion deciding that paragraph 2 of § 13 is invalid.

The conflict presented between the statutory and the constitutional provisions before us lies in § 13's assessment, labeled as a "cost", for deposit in the law enforcement officers training fund, of 10% of "every fine, penalty, and forfeiture imposed and collected by the courts for criminal offenses." This assessment confronts and we think conflicts with the constitutional prescription of article 8, § 9, that all fines assessed for the breach of the penal laws of this State shall be "exclusively applied" to the support of designated libraries.

We determine that the assessment prescribed by paragraph 2 of § 13 cannot be considered to be "costs" because we conclude from our study of cases from the Michigan Supreme Court and from other jurisdictions that by definition "costs", to be taxable as incident to the prosecution of criminal charges, must bear some direct relation to actual costs incurred in such prosecutions. Concluding that the assessment prescribed by paragraph 2 of § 13 is not a "cost", we construe it to be in actuality a supplemental fine, since it operates in effect as a 10% surcharge on fines imposed on convicted defendants. But such a supplemental fine is squarely

in conflict with the explicit provision of article 8, § 9 of the 1963 Constitution of the State of Michigan, quoted above.

In forming our judgment, we bear in mind the norms governing the review of legislative enactments, norms expressed well by Justice BUTZEL in *Township of Dearborn* v. *Dearborn Township Clerk* (1952), 334 Mich 673:

"We are mindful of the restrictions upon the power of this Court to declare a challenged statute in conflict with our Constitution. It is too well settled to require citation that a statute must be treated with the deference due to a deliberate action of a co-ordinate branch of our State government. If the legislature enacted a statute which does not violate the provisions of the Constitution, this Court may not inquire into the wisdom of the legislation or substitute its judgment for that of the legislature. The conflict between the statute and constitutional provisions must be clear and inevitable before we strike down a statute as unconstitutional." 334 Mich 673, 680.[4]

We find in the present case a clear and inevitable conflict between the statutory and the constitutional provisions before us. The defect of the statutory provision under scrutiny is betrayed by the language of the statute:

*"There shall be levied an assessment as additional cost* in an amount equal to 10% of every fine, penalty, and forfeiture imposed and collected by the courts for criminal offenses * * *" CL 1948, § 28.613, as added by PA 1965, No 203 (Stat Ann 1968 Cum Supp § 4.450[13]). (Emphasis supplied.)

---

[4] In this case, the Supreme Court struck down, as violative of the separation of powers of the judicial and legislative branches of government, as required by the Constitution of 1908 then in effect, a statute providing that justices of the peace should sit on township boards of supervisors.

The label of "cost" is attached to the levy of an assessment. But legislative labeling cannot preclude judicial determination, or excuse a court from its responsibility to give realistic construction to terms employed in statutes. In *Continental Motors Corporation* v. *Township of Muskegon* (1965), 376 Mich 170, the Supreme Court construed a tax there under scrutiny to be an excise tax, even though the legislature had cast the tax in the pattern of an *ad valorem* property tax. Justice SOURIS expressed the opinion of the Court:

"While the legislature in imposing the new tax has utilized the language of ad valorem taxation, the tax nonetheless in its operation and practical effect is a tax upon the privilege of possession and use for profit of another's tax-exempt personal property and, therefore, it is an excise and not an ad valorem property tax." 376 Mich 170, 178.

In *Continental Motors* the legislature's description of the tax did not bind the Supreme Court's construction of its operation and practical effect. Similarly, the label of "cost" attached to the assessment prescribed by § 13 cannot preclude our inquiry into the actual operation of the levy.

Our research has disclosed no decision in this jurisdiction or in any other jurisdiction construing the term "costs" to include a levy for a purpose so remote from prosecution as is the purpose for which § 13's assessment is levied.

The Michigan Supreme Court has in numerous cases considered the term "costs" as the term relates to criminal prosecutions. *People* v. *Wallace* (1929), 245 Mich 310; *People* v. *Davis* (1929), 247 Mich 672; *People* v. *Robinson* (1931), 253 Mich 507; *People* v. *Teasdale* (1952) 335 Mich 1. In these cases the Supreme Court has interpreted a variety of

statutes providing for the imposition of costs in criminal prosecutions. The rationale behind these interpretations leads us to the conclusion that costs, to be taxable, must bear some direct relation to actual costs incurred in a given criminal prosecution.

In *People* v. *Wallace* (1929), 245 Mich 310, *supra,* the Supreme Court stated: "Costs imposed must bear some reasonable relation to the expenses actually incurred in the prosecution." 245 Mich 310, 314. This mandate was again laid down in *People* v. *Davis* (1929), 247 Mich 672, the Court reiterating that "costs imposed in a criminal case must bear a true relation to the expense of the prosecution." 247 Mich 672, 673. Also see *People* v. *Robinson, supra.*

In *People* v. *Teasdale* (1952), 335 Mich 1, *supra,* the Court, interpreting the statute providing for the imposition of costs on convicted defendants placed on probation,[5] concluded that:

"The language of the statute necessarily implies that the expenses in question must have been incurred in connection with the particular case in which the order of probation is made, and, hence, excludes expenditures in connection with the maintenance and functioning of governmental agencies that must be borne by the public irrespective of specific violations of the law." 335 Mich 1, 6.

The cost of maintaining the law enforcement officers training council, whose important function no one questions, bears no reasonably direct relation to the costs actually incurred in the prosecution of the defendant, Gerald Barber; and, therefore, the assessment prescribed by § 13 for deposit in the

5 CLS 1961, § 771.3 (Stat Ann 1968 Cum Supp § 28.1133).

law enforcement officers training fund is not a "cost" of prosecution.

The defect of the provision under scrutiny is likewise betrayed by the direct link-up between the assessment prescribed by § 13 and the exercise by the trial judge of the discretion invested in him when he imposes a fine on a convicted criminal defendant. According to the prescribed operation of paragraph 2 of § 13, the amount of the assessed "costs" slides on a scale fluctuating with the discretion exercised by the trial judge in each case when, considering the characteristics of each defendant who comes before him and the circumstances of the offenses committed, the judge determines the amount of a fine to be imposed. An assessment whose amount depends in every instance on this highly individual exercise of discretion by the trial judge bears no reasonably direct relation to actual costs incurred in the prosecution of a criminal defendant and therefore cannot be considered by the reasoning of any authority to represent "costs" incurred. Rather, since this assessment would, by the statutory scheme of § 13, operate as a 10% surcharge on fines imposed, we think it most reasonable to construe it to be in actuality a supplemental fine. But the imposition of such a supplemental fine, appropriated to the law enforcement officers training fund, runs squarely into the explicit provision of the Constitution to which we are bound to give precedence.

We recognize the legislative authority to define the limits within which judicial discretion in imposing sentences may be exercised, but the legislature cannot circumvent the explicit provision of the Constitution by placing the label "costs" on what by no construction of the term can be considered costs. The legislative label cannot preclude or bind judicial determination. *Continental Motors Corpo-*

*ration* v. *Township of Muskegon, supra. Marbury* v. *Madison* (1803), 5 US (1 Cranch) 137 (2 L Ed 135).

The circuit judge, in giving his opinion, expressed the perspective of a trial judge confronted by the application of § 13: "The legislature purports to sit in with the sentencing judge in the exercise of his discretion." The circuit judge observed how the operation of § 13 would require him to make calculations taking this unique assessment into account as he fixed what he deemed to be the appropriate fine in each case brought before him for the exercise of his judicial discretion. A judge, in imposing a fine, takes into account all the circumstances of the offense committed and all the characteristics of the convicted defendant, including his economic situation. The fine fairly imposed on the affluent mobster would not be justly imposed on the indigent derelict. The "piggy-back" operation of the assessment prescribed by § 13 would, we think, obscure this individual focus required by the exercise of judicial discretion in every case.

The courts of other jurisdictions, in determining what are awardable costs in criminal prosecutions, have, in all decisions disclosed by our research, shared the common conclusion that taxable costs must bear some direct relation to actual costs incurred in prosecution.[6]

The Oklahoma Criminal Court of Appeals, in *Ex parte Coffelt* (1951), 93 Okla Crim 343 (228 P2d 199), held invalid an Oklahoma statute providing that in all criminal prosecutions resulting in convictions, the courts of the state should "*   *   * in addition to all other court costs, assess the additional sum of One Dollar ($1.00) costs against the

---

[6] See Annotation on defendant's liability for costs of prosecution, 65 ALR2d 854.

defendant", a sum to be "* * * appropriated to
the Pardon and Parole Board * * * for its use
in defraying salaries and expenses of the Pardon
and Parole Officer and his assistants." (228 P2d
199, 200.) The Oklahoma court concluded that costs,
to be taxable in a criminal prosecution, must bear
a direct relation to the actual costs of prosecution.

The Oklahoma court found further objection to
this statute it struck down in its violation of the
separation of powers as required by the Constitu-
tion of Oklahoma:

"Through this fiat of taxation the legislature seeks
to collect under the guise of costs a tax for the
maintenance of the Pardon and Parole officer and
his assistants. Such an attempt clearly violates the
fundamentals of the division of powers. It is an
attempt to make the courts discharge the function
of the executive branch of the government and use
them as a tax gathering agency, and appropriate
the moneys thus collected for the maintenance of
a branch of the executive department of govern-
ment." (228 P2d 199, 202.)

Although in the present case we decide no question
concerning the separation of governmental powers,
we think there is validity in the Oklahoma court's
reasoning. Courts are not tax-gatherers.

The same Oklahoma Court of Criminal Appeals,
following its decision in *Ex parte Coffelt, supra,*
held invalid another statute providing for the assess-
ment against a convicted defendant of $2, an amount
to be paid to the pension and retirement system for
policemen. *Ex parte Miller* (1953), 97 Okla Crim
351 (263 P2d 522). The court again founded its
decision on the conclusion that the prescribed as-
sessment could not be considered incident to the
actual prosecution of criminal charges.[7]

---

[7] In *Carter* v. *City of Norfolk* (1966) 206 Va 872, 147 SE2d 139),
(cited in ALR2d "Later Case Service" for the annotation at 65 ALR

In both these Oklahoma cases, the unquestionably beneficent purposes of the assessments struck down were approximately as remote from actual prosecution as is the purpose for which § 13's assessment is levied.

The Court of Criminal Appeals of Texas, in *Ex parte Carson* (1942), 143 Tex Crim 498 (159 SW2d 126), concluded that a statutorily prescribed contribution to the State Library Fund could not be considered a "cost" of litigation. The Court, discussing the question of remoteness in the taxation of costs, stated:

"Such reasoning would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend." (159 SW2d 126, 127.)

This reasoning of *reductio ad absurdum* has applicability here, and it reinforces our conclusion that, in order to be taxable as incident to criminal prosecution, "costs" must bear some direct relation to actual costs incurred in prosecution.

---

2d 854, "Defendant's Liability for Costs of Prosecution", note 6 *supra*) the Supreme Court of Appeals of Virginia upheld a statutory imposition of $5 taxed as costs to defendants convicted of traffic offenses reportable to the Virginia Division of Motor Vehicles. The Virginia General Assembly assessed this sum to help defray the administration costs of the Division of Motor Vehicles. The Virginia court, deciding that the legislative designation of the assessment of "costs" was valid, found a "true and direct relationship" between the particular statutory assessment there under scrutiny and the actual costs incurred in the prosecution of traffic violations, and on this basis distinguished *Ex parte Coffelt, supra,* and *Ex parte Miller, supra.*

Other arguments have been advanced to attack and to defend the statute under review. Defendant advances in particular the argument that § 13 contravenes the constitutional provision that "No law shall embrace more than one subject, which shall be expressed in its title."[8] This argument is not persuasive because the jurisprudence of this State has repeatedly stated that broadly related purposes may permissibly be accomplished by one statute within the scope of this constitutional provision, as long as nothing incongruous to the object of a statute is inserted among its provisions. See Justice COOLEY's opinion in *People* v. *Mahaney* (1865), 13 Mich 481, pp 494, 495; *Board of Supervisors of Kent County* v. *Reed* (1928), 243 Mich 120; *In re Brewster Street Housing Site* (1939), 291 Mich 313. The trial court in its opinion made reference to but did not decide this question. The disposition of this and other arguments urged on appeal is not necessary to decision in the present case, and we do not consider them.

No question has been raised in this proceeding concerning any section of PA 1965, No 203 other than § 13. Section 13 is the only section of that Act at issue before us, and we strictly limit our decision here to the holding that paragraph 2 of § 13 violates article 8, § 9 of the 1963 Constitution of the State of Michigan, and is therefore invalid.

Affirmed. No costs are awarded since a public question is involved.

J. W. FITZGERALD, P. J., and R. B. BURNS, J., concurred.

---

[8] Constitution of 1963, art 4, § 24. The roots of this provision were in the Constitution of 1908, art 5, §§ 21 and 22; Constitution of 1850, art 4, §§ 20 and 25.