**Appellant's En Banc Rehearing Denied; Majority Opinion and Concurring and Dissenting Opinion of December 5, 2013, Withdrawn; Affirmed and Substitute Majority Opinion and Substitute Concurring and Dissenting Opinion filed March 6, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00378-CR

---

**ORLANDO SALINAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1313253**

---

## C O N C U R R I N G   A N D   D I S S E N T I N G   O P I N I O N

I concur with the majority as to the resolution of appellant's first two issues. However, I would find section 133.102(a)(1) of the Texas Local Government Code to be unconstitutional on its face. Specifically, I would find that none of the funds mentioned in the statute meet the *Carson* test, despite appellant's attempted

concession on appeal, and the court costs cannot be reallocated. Because the majority holds otherwise, I respectfully dissent.

## *Consolidated Court Cost*

In addition to the numerous assessments associated with the actual cost of a convicted person's trial; *see, e.g.*, Texas Code of Criminal Procedure sections 102.001-102.022 and Texas Government Code section 102.021; the Texas Legislature has, in section 133.102(e), assessed a "sin tax"—a standard fee to be paid by all convicted criminals. This fee, denominated as a "court cost," applies regardless of any costs actually expended in the trial. The statute requires the consolidated cost to be allocated according to the percentages provided in the statute. Tex. Loc. Gov't Code § 133.102(c).[1] Appellant contends that the trial court's assessment of a "consolidated court cost" against him violated the

---

[1] The version of the statute relevant to this case listed the recipient funds and their required allocation percentages as follows:

| | | |
|---|---|---|
| (1) | abused children's counseling | 0.0088 percent; |
| (2) | crime stoppers assistance | 0.2581 percent; |
| (3) | breath alcohol testing | 0.5507 percent; |
| (4) | Bill Blackwood Law Enforcement Management Institute | 2.1683 percent; |
| (5) | law enforcement officers standards and education | 5.0034 percent; |
| (6) | comprehensive rehabilitation | 9.8218 percent; |
| (7) | operator's and chauffeur's license | 11.1426 percent; |
| (8) | criminal justice planning | 12.5537 percent; |
| (9) | an account in the state treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A&M University | 1.2090 percent; |
| (10) | compensation to victims of crime fund | 37.6338 percent; |
| (11) | emergency radio infrastructure account | 5.5904 percent; |
| (12) | judicial and court personnel training fund | 4.8362 percent; |
| (13) | an account in the state treasury to be used for the Establishment and operation of the Correctional Management Institute of Texas and Criminal Justice Center Account and | 1.2090 percent; |
| (14) | fair defense account | 8.0143 percent. |

2

separation of powers clause of the Texas Constitution. Tex. Const. art. II, § 1. Appellant further contends resolution of this case is governed by the Court of Criminal Appeals opinion in *Ex parte Carson*, 143 Tex. Crim. 498, 159 S.W.2d 126 (1942). I agree. The majority suggests that *Carson* "cannot bear the weight" of appellant's argument, *see ante* p. 12; however, I believe that *Carson*, though imperfect, is binding precedent on this court. *Cf. Reed v. Buck*, 370 S.W.2d 867, 870-871 (Tex. 1963) (explaining that because certain cases had "not been cited in recent years[, the lower court] was of the opinion that these ancient cases, like old soldiers, had just faded away. [But these] are decisions of this Court and unless there is some good reason for overruling them, they should not be disregarded.").

The fee which the *Carson* Court held unconstitutional, as neither necessary nor incidental to the trial, was a $1 library fee to be collected in certain counties expressly for the creation and maintenance of law libraries in those counties to be made available for judges and attorneys. 159 S.W.2d at 127. In discussing its reasoning, the *Carson* Court unfortunately did not cite any particular provision of the constitution that it found to be violated by the law library assessment. The Court, however, called the $1 assessment a "tax" and noted that there was a conflict among other jurisdictions regarding whether such charges could be considered legitimate costs of court. *Id*. at 127.[2] Still today, there exists a split among jurisdictions as to whether the "costs" for items not directly related to trial of a defendant's case can be assessed against a defendant without violating constitutional clauses mandating the separation of powers among branches of government. *Compare State v. Claborn*, 870 P.2d 169, 171 (Okla. Crim. App. 1994) (holding court cost not reasonably related to costs of administering criminal

---

[2] While noting the existence of a conflict among other jurisdictions, the Court in *Carson* did not cite, much less specifically discuss, any cases from other jurisdictions, stating they were all "more or less based upon an arbitrary conclusion." 159 S.W.2d at 127.

justice system renders courts "tax gatherers in violation of separation of powers"), *and People v. Barber*, 165 N.W.2d 608, 613 (Mich. 1968) (explaining legislature could not circumvent the explicit provision of the constitution by placing the label "costs" on items that were clearly not costs of court), *with Broyles v. State*, 688 S.W.2d 290, 292 (Ark. 1985) (holding that a cost charged to a criminal defendant convicted of driving while intoxicated to support programs relating to drunken driving, detoxification services, and alcohol and drug abuse rehabilitation was constitutional since funds go to agencies created to keep the highways safe from drunk drivers); *and State v. Young*, 238 So.2d 589, 589-90 (Fla. 1970) (holding that a statute imposing a one dollar "court cost" for law enforcement on every person convicted of a crime was not a violation of the separation of powers doctrine because it is reasonable that one convicted of a crime "should be made to share in the improvement of agencies that society has had to employ in defense against the very acts for which he has been convicted").[3] It is therefore likely that the *Carson* Court based its decision on the same provision relied upon by appellant in the present case: the separation of powers clause contained in article II, section 1 of the Texas Constitution.

Regardless of the opinion's legal underpinnings, the *Carson* Court clearly favored a strict definition of permissible "court costs" in a criminal case, stating that the opposing view,

> would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the

---

[3] By citation to these cases, I am not suggesting that courts in these jurisdictions would or would not find the consolidated court cost in this case constitutional or unconstitutional. I cite them merely to indicate that there is a lack of uniformity regarding how such costs are viewed.

attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend.

159 S.W.2d at 127.[4]

Applying the Court of Criminal Appeals' strict standard to the statute at issue in the present case, I would hold that none of the fourteen programs funded by collection of the consolidated court cost from convicted defendants, pursuant to section 133.102, pass constitutional muster.[5] Certainly, there is no indication in the record that any of the funded items represent actual costs incurred in appellant's trial. More importantly, none of the fourteen is less remote in its relationship to the court proceedings in this case than was the funding for a law library to be used by judges and attorneys in *Carson*.[6]

The majority holds that appellant failed to overcome the presumption of

---

[4] The Court of Criminal Appeals has recognized a distinction between fines imposed in Chapter 12 of the Texas Penal Code and court costs intended as nonpunitive recoupment of judicial resources expended in connection with the trial of the case. *See Weir v. State*, 278 S.W.3d 364, 365-66 (Tex. Crim. App. 2009). Under the analysis in *Weir*, costs assessed pursuant to section 133.102 are clearly nonpunitive in nature. The statute at issue in *Weir*, Texas Government Code section 102.021, and the statute at issue here, section 133.102, are drafted in very similar fashions. However, section 102.021 lists actual items of cost in criminal trials (*e.g.*, a fee for services of prosecutor and fees for executing or processing an arrest warrant), whereas section 133.102 attempts to fund programs less directly related, if at all, to appellant's trial.

[5] My analysis in this case should not be considered a reflection on the relative merits of the programs funded under section 133.102. Moreover, I recognize that making convicted criminals pay for certain programs, rather than obtaining funding through other means of revenue, may seem an attractive, expedient, and fair option. Nonetheless, this intermediate court of appeals is bound to follow the precedent established by the Court of Criminal Appeals. *See* Tex. Const. art. V, § 5(a); *Purchase v. State*, 84 S.W.3d 696, 701 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

[6] The State suggests that the consolidated court costs assessed in this case are constitutional because they totaled less than the true costs of appellant's prosecution. Even if there were evidence to support the State's position, *Carson* does not sanction such an analysis. As discussed, the *Carson* court held that a $1 court cost was unconstitutional because it was "neither necessary nor incidental to the trial of a criminal case." 159 S.W.2d at 127.

section 133.102's constitutionality because he failed to establish what the funds designated in section 133.102(e) "actually do" beyond the statutory language, that is, the titles given the funds by the Legislature. However, if the meaning of the statutory language is unambiguous, we must adopt the interpretation supported by the plain meaning of the provision's words. *See Sowell v. Int'l Interests, LP*, No. 416 S.W.3d 593, 596 (Tex. App.—Houston [14th Dist.] Aug. 29, 2013, pet filed) (citing *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997)). I would hold that appellant has met his burden concerning whether the fourteen funds meet the *Carson* test of "necessary or incidental."[7]

In his reply brief, appellant provides a fairly detailed analysis of each funded item, including references to governing statutes where discernable. Appellant concedes on appeal that amounts collected and distributed to two of the programs listed in section 133.102—number 12, regarding the judicial and court personnel training fund, and number 14, concerning contribution to the "fair defense

---

[7] Appellant presented the trial court with a newspaper article exposing the collection of tens of millions of dollars from convicted criminals for use on programs wholly unrelated to their trials or crimes. *See* Eric Dexheimer, *Hard-up defendants pay as state siphons court fees for unrelated uses*, Austin-American Statesman, March 3, 2012. The majority does not suggest what else appellant could have done apart from discussing the language of the statutes themselves and the published results of investigative reporting. Requiring a defendant to divine the inner workings of fourteen different governmental programs in order to contest a $133 fee is an onerous burden and one that practically guarantees the unconstitutional statute will go unchallenged. I do not view the appellant's burden to be so great.

The language of section 133.102 itself proves its own undoing, providing funding for abused children's counseling (although there is no allegation of such abuse in this case), crime stoppers' assistance (even though there is no indication of crime stoppers' involvement in this case), breath alcohol testing (although there was no evidence of any such testing occurring in this case), driver's licenses (although no issue related to driving was involved in this case), establishment of a center to study juvenile crime (even though no juvenile was involved in this case), and an account for emergency radio infrastructure (even though there is no hint in this case that such was at issue here). Most of the remaining funded programs are clearly related to the training and education of judicial system officials and employees, in direct contravention of *Carson*. Perhaps these are all laudable programs, but they are improperly and unconstitutionally funded through section 133.102.

account"—may be sufficiently related to the operation of courts as to not violate the separation of powers clause. While I agree that these may be the two programs most closely related to the court proceedings and I understand why appellant's counsel would want them included in the distribution of costs, I do not agree that these items should be excepted. Regarding the training fund, as the excerpt above illustrates, the *Carson* Court specifically discounted the notion that funds for court training can be a legitimate cost of court to be charged to a convicted defendant. 159 S.W.2d at 127 ("If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges . . . .").

By statute, the fair defense account may only be appropriated to (1) the Texas Indigent Defense Commission for the purpose of implementing Chapter 79 of the Government Code, which governs administration of the commission, and (2) the office of capital writs for implementing Chapter 78, Subchapter B of the Code, which establishes the office. Tex. Gov't Code § 79.031. Although it appears some of the funds that go to the fair defense account may ultimately help provide counsel for indigent criminal defendants, it does not appear that this is the sole use that can be made for these funds.[8] *See*, *e.g.*, Tex. Gov't Code §§ 79.019 (authorizing commission funds to be used to reimburse board members' expenses); 79.035 (requiring commission to collect information from counties and issue reports concerning various facets of indigent representation in Texas); 70.039 (requiring commission to collect information from law school clinics and programs and issue exoneration reports). It therefore cannot be said that either the training

---

[8] Appellant additionally complains in his brief that funds intended for the fair defense account have instead been used to balance the State's budget. I neither consider nor take a position on this complaint.

fund or the fair defense account are necessary or incidental expenses in the trial of appellant's criminal case. *See Carson*, 159 S.W.2d at 130.[9]

The majority suggests that even if funding certain of the fourteen items was determined to be unconstitutional, section 133.102 need not be stricken in its entirety because the $133 collected could simply be allocated to any remaining constitutional uses, regardless of the specific percentages identified in the section (*see infra* n.4). According to the majority, the specified percentages "set only a minimum or floor amount that must be distributed to particular funds." *See ante*, p. 14. Although the majority is not explicit, it appears to base this conclusion on language contained in subsection (e), which provides "the account or fund may not receive less than the following percentages." In this regard, the majority appears to misread what is not a model of statutory clarity.

Section 133.102 actually provides different instructions for allocation, depending on whether the offense in question was committed before or after January 1, 2004. Under subsection (c), "The money collected under this section as court costs imposed on offenses committed on or after January 1, 2004, ***shall be allocated according to the percentages provided in Subsection (e)***." (Emphasis added). Appellant clearly committed the charged offense after January 1, 2004, so the $133 collected from him pursuant to the section must be allocated according to the expressly listed percentages.[10]

---

[9] Code of Criminal Procedure article 26.05(g) allows the trial court to order a defendant to repay the cost of court-appointed legal counsel that the court finds the defendant is able to pay. Tex. Code Crim. Proc. 26.05(g). However, it does not appear in the present case that the trial court made a determination under article 26.05(g). *See Cates v. State*, 402 S.W.3d 250, 251-52 (Tex. Crim. App. 2013).

[10] Under subsection (d), money collected on offenses committed before January 1, 2004 is to be distributed using historical data so that each account or fund receives the amount it would have received had the "costs" for the accounts and funds been collected and reported separately. Subsection (e) actually repeats this language from subsection (d) before adding the

8

Moreover, there is no provision in section 133.102 authorizing or otherwise supporting reallocation of funds intended for one program to another program. The section, in fact, contains no provisions for severability in the event sections are determined to be unconstitutional, and the majority errs in injecting inapplicable severability rules into the statute. Under the circumstances presented in this case, the statute requires $133 be gathered and distributed according to specified percentages. Period. Because the statute cannot be salvaged by severing constitutionally-funded programs from those not properly funded, the statute is facially unconstitutional even if certain of the listed programs could be constitutionally funded through court costs assessed against criminal defendants.

Regardless, as stated, under the Court of Criminal Appeals opinion in *Carson*, none of the fourteen items funded under Local Government Code section 133.102 constitute a cost necessary or incidental to the trial of a criminal case. *Id*. These are therefore not legitimate items to be assessed against criminal defendants. Accordingly, I would sustain appellant's first issue and hold that section 133.102 is unconstitutional and the $133 must be deleted from the trial court's judgment. Because the majority did not so hold, I respectfully dissent. I concur in the remainder of the majority's holdings and analysis.

/s/    Martha Hill Jamison
       Justice


Panel consists of Justices Boyce, Jamison, and Busby (Boyce, J., majority).

Publish — Tex. R. App. P. 47.2(b).

---

clause on which the majority apparently relies: "except that the account or fund may not receive less than the following percentages." This language, therefore, appears to refer to money collected on offenses committed before January 1, 2004, and not those committed on or after that date, as is the case with appellant's offense.