*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRAVIS MICHAEL JOHNSON,

        Defendant-Appellant.

FOR PUBLICATION
April 8, 2021

No. 351308
Alpena Circuit Court
LC Nos. 17-007577-FH; 17-
        007941-FH

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

SHAPIRO, P.J. (*dissenting*).

I respectfully dissent and would hold that MCL 769.1k(1)(b)(*iii*) is unconstitutional.

This "tax" case becomes much clearer once we set aside the fact that all the "taxpayers" are convicts. Of course, their status is central to the question before us, and I will return to it. But the fact that they have all been convicted of criminal offenses acts as a veil, blurring our consideration of what is in fact an unconstitutional tax.

Consider the hypothetical adoption of a new statewide tax that is not limited to convicts. The statute defining it directs trial courts to assess each person in their locality a per capita share of the cost to operate the courts (on top of what is already paid in income, property and sales taxes). The amount of this court-funding tax is undefined in the statute and unlike any other statewide tax, the amount that must be paid will depend on which county or city the taxpayer lives in. Moreover, even within a single locality, the tax assessors will retain discretion to vary the tax from person to person as they see fit. This hypothetical statute further provides that if the tax is not paid on the date due, a 20% penalty shall be automatically and immediately imposed. Finally, if someone fails to pay, they will be sent an order to appear at the tax collector at a certain time and date to prove that they are indigent. If they fail to show up at the time and place ordered, or the tax collector concludes that they are able to pay, they are subject to arrest and incarceration.

I doubt that anyone in the state would consider such a tax constitutionally sound, yet it accurately describes the tax scheme imposed by MCL 769.1k(1)(b)(*iii*) and the related statutory provisions. The scheme violates due process, allows the tax to vary from county to county and

-1-

even judge to judge and it infringes on the authority of the judiciary as a co-equal branch of government.[1] When we add to the facts that the judiciary is the tax assessor, the tax collector, the beneficiary of the taxes, and vested with the authority to promptly incarcerate those who fail to pay, the question of constitutionality seems almost quaint.

So why is it different when the only persons burdened with this tax are those convicted of crimes? How can we uphold such a "tax"? If the sole basis to do so is that these taxpayers have been convicted of a crime, then the notion that this is a tax, rather than a fine, collapses. I recognize that in *People v Konopka (On Remand)*, 309 Mich App 345, 372; 869 NW2d 651 (2015), a panel of this Court opined that the language of MCL 769.1k(1)(b)(*iii*) "does not reflect an intent by the Legislature to make the imposition of court costs a criminal punishment" because the statute "does not refer to a fine but instead provides for the imposition of costs reasonably related to the actual costs incurred in the operation of the court." (Emphasis removed). "But legislative labeling cannot preclude judicial determination, or excuse a court from its responsibility to give realistic construction to terms employed in statutes." *People v Barber*, 14 Mich App 395, 401; 165 NW2d 608 (1968). Simply changing the nomenclature from "fine" to "costs" does not alter the nature or the effect of the charge imposed. More to the point, the Legislature's allowance of costs without any limitation on the amount did not arise from a nonpunitive intent, but to execute an end run around Michigan's constitutional provision—in effect since 1835—that penal fines may not be used to financially support the courts.[2] Using the term costs masks the punitive nature of the assessment, but does not change it. MCL 769.1k(1)(b)(*iii*) requires courts to do exactly what our several constitutions have all barred—take money from convicted defendants and use it to fund its operations, including paying judicial salaries.

---

[1] I also conclude that taxing court costs is inconsistent with the separation of powers, not because the Legislature lacks the authority to delegate as was argued in *People v Cameron*, 319 Mich App 215; 900 NW2d 658 (2017), but because the judiciary cannot be legislatively commanded to perform the legislative function of determining the amount of a tax and the executive function of enforcing it. In addition, I would conclude, contrary to *Cameron*, that the tax violates the Distinct Statement Clause, which requires that "[e]very law which imposes . . . a tax shall *distinctly* state the tax." Const 1963, art 4, § 32 (emphasis added). I cannot read a statewide tax that varies from county to county, city to city or possibly from judge to judge, as having "distinctly state[d] the tax." Nor is a tax distinctly described by indicating that the amount must be "reasonable."

[2] Const 1963, art 8, § 9 provides:

> All fines assessed and collected in the several, counties, townships and cities for any breach of the penal laws shall be exclusively applied to the support of . . . public libraries and county law libraries as provided by law.

In *Bd of Library Comm'rs of the Saginaw Pub Libraries v Judges of the 70th District Court*, 118 Mich App 379, 389; 325 NW2d 777 (1982), it was held that monies obtained through civil fines, i.e., fines imposed for actions that are not punishable by imprisonment, are not subject to this constitutional limitation given its reference to "penal laws."

Indeed, many judges do not accept this linguistic pretense and have in fact experience quite the opposite. It is either naïve or insincere to suggest that local judges are not pressured by local government officials to increase their "contribution" to the general fund and that this has no effect on a judge's decision regarding whether to assess costs and in what amount. Should there be any doubt, one need merely review the brief and exhibits submitted by the Michigan District Judges Association in its amicus brief to the Supreme Court in *People v Cameron*, 504 Mich 927 (2019). The heading of one section of the brief reads, "MCL 769.1k(1)(b)(iii) creates a conflict of interest for every judge in this State who has to report to the court's funding unit about the revenues generated to operate the court and the county." It goes on to point out that in our system of an elected judiciary, a local judge who does not assess sufficient court costs to satisfy the municipality runs a real risk of losing their position. As one judge stated, "[T]here is a direct relationship between maintaining court funding and a judge's reelection." Another judge recounted that her municipality threatened to evict the court from the courthouse unless the court generated more revenue through assessments on criminal defendants. Other judges reported that they were told by their funding units that unless their court generated more revenue, its budget would be slashed. Yet another judge noted that her court's budget is not predicated on the needs of the court's operation "but is tied exactly to the amount of revenue we generate through fines and costs."[3] Thus, there is an ongoing incentive to continue and expand the amount and collection of costs assessed against criminal defendants.

When court costs were first imposed, the amounts to be assessed were specifically set forth by statute and were *de minimis*. For instance, the amounts at issue in *Bd of Library Comm'rs of the Saginaw Pub Libraries v Judges of the 70th District Court*, 118 Mich App 379, 389, 387, 390; 325 NW2d 777 (1982), were a $5 judgment fee and an additional $3 fee imposed on certain cases. I would agree that such a *de minimis* sum need not trigger constitutional review. However, *Saginaw Pub Libraries* went on to say that "[a] fee which . . . would be considerably greater than [the $5] involved here might offend the constitutional or statutory provisions," *id*. at 389, and that when one also considers the sometimes-imposed $3 fee in addition to the $5 judgment fee, i.e., a

---

[3] Contrast this situation to principle 1.5 established by the National Center for State Court's National Task Force on Fines, Fees and Bail Practices:

> Courts should be entirely and sufficiently funded from general governmental revenue sources to enable them to fulfill their mandate. Core court functions should generally not be supported by revenues generated form court-ordered fines, fees, or surcharges. Under no circumstances should judicial performance be measured by, or judicial compensation be related to, a judge's or a court's performance in generating revenue. A judge's decision to impose a legal financial obligation should be unrelated to the use of revenue generated from the imposition of such obligations. Revenue generated from the imposition of a legal financial obligation should not be used for salaries or benefits of judicial branch officials, or operations, including judges, prosecutors, defense attorneys, or court staff, nor should such funds be used to evaluate the performance of judges or other court officials. [<https://www.ncsc.org/__data/assets/pdf_file/0016/1609/principles-fines-fees.ashx.pdf> (accessed March 25, 2021).]

total of $8, the sum "was closer to the line, [but] the Legislature has not exceeded a reasonable base cost that may be assessed in all cases," *id*. at 390. That sum, which this Court concluded was "closer to the line," amounts to $22 in present value.[4] However, these modest assessments skyrocketed following the adoption of MCL 769.1k(1)(b)(*iii*) in 2005 which authorized imposition of court costs in criminal cases of "any cost in addition to the minimum state cost." 2005 PA 316.

In *People v Sanders*, 296 Mich App 710, 715; 825 NW2d 710 (2012), overruled on other grounds by *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), we held that court costs of $1000 were not "obviously unreasonable," but we made no reference to *Saginaw Pub Libraries* nor its conclusion that court costs in excess of $8 might be constitutionally excessive.

If these assessments were genuinely a tax they would be applied to all litigants, or at least all nonprevailing litigants, not just convicted defendants. There is no rational basis to apply the fees only to convicted defendants other than the fact that, having broken the law, they may be punished.[5] And as persons convicted of a crime, they have little, if any, standing in the political process and public opinion and so can be forced to pay extraordinary sums to the government compelled under the threat of further incarceration. In other words, they are a group of people whose protests against these "taxes" are unlikely to be heard, let alone addressed.[6] But the fact that the individuals subject to this tax are essentially unrepresented in the legislative and executive branches should heighten, rather than lessen, the care with which we address the constitutional question.

The state points out that judges do not personally receive funds as a result of cost assessments. However, institutions, just like people, have financial interests. And those financial interests become the concern of the individuals assigned the task of assessing and collecting the necessary funds. When a district court is threatened to have its funding cut because it has not imposed high enough court costs, it has an effect on those who must determine the amount of those costs, namely judges. Making judges impose and collect taxes from those who appear before them exposes them to the "temptation to . . . not hold the balance nice, clear and true between the state

---

[4] See United States Department of Labor, Bureau of Labor Statistics, *CPI Inflation Calculator* <https://www.bls.gov/data/inflation_calculator.htm> (accessed March 25, 2021).

[5] It would be difficult to argue that imposing a substantial tax on mostly indigent people is grounded in sound revenue planning. Moreover, it is a uniquely expensive tax to enforce. According to the Brennan Center, the costs of collecting court costs, including jailing non-payers who have not obtained a court-ordered waiver, constitutes 41 cents out of every dollar collected. In contrast, the IRS "spends just $0.34 for every *hundred* dollars in taxes collected." Brennan Center for Justice, *The Steep Costs of Criminal Justice Fees and Fines* (2019). <https://www.brennancenter.org/our-work/research-reports/steep-costs-criminal-justice-fees-and-fines> (accessed March 25, 2021) (emphasis added).

[6] Nor is it necessarily wise criminal justice policy. As the amicus brief observes, "Far from being an effective measure of public safety, the imposition of these costs leaves poor defendants increasingly unable to function safely in society, as they face warrants and other barriers to stable employment, caused by their inability to pay."

and the accused." *Tumey v Ohio*, 273 US 510, 532; 47 S Ct 437; 71 L Ed 749 (1927). At a minimum, there is an appearance of impropriety. As Justice SCALIA has observed, "it makes sense to scrutinize governmental action more closely when the State stands to benefit." *Harmelin v Michigan*, 501 US 957, 979 n 9; 111 S Ct 2680; 115 LEd2d 836 (1991) (opinion by SCALIA, J.). A system that funds a branch of government by taking, under threat of additional incarceration, large sums from persons convicted of crimes, many, if not most, of whom are indigent and wholly without political influence, deserves such "close" judicial scrutiny. I agree with the majority that legislative action would be welcome and is needed. But it is the judiciary that demands, collects and uses the funds obtained. And it is the judiciary that determines whether or not the statute is constitutional.

"Court costs" assessed only from convicted defendants are fines. Because they are not authorized by the statute defining the relevant crime, I would conclude that they may not be imposed. For these reasons, I respectfully dissent and would hold that MCL 769.1k(1)(b)(*iii*) is unconstitutional.

/s/ Douglas B. Shapiro