EX PARTE SAM CARSON.

No. 21912. Delivered January 7, 1942.
Rehearing Denied March 11, 1942.

The opinion states the case.

*J. S. Bracewell* and *Jesse A. Pardue,* both of Houston, for appellant.

*Dan W. Jackson,* Criminal District Attorney, and *Tod R. Adams,* Assistant Criminal District Attorney, both of Houston, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Sam Carson was convicted in the Justice Court of Harris

County upon a charge based upon a State law and for an offense of which that court had jurisdiction. He appealed to the County Court at Law No. Two, where he was again convicted and fined $5.00. There being no right of further appeal, he instituted proceedings to effect his release by applying for a writ of habeas corpus to the county court. Relator being remanded, appeal has come from such order.

While the attack is general on the judgment against him, we understand that the principal purpose of the appeal is leveled at an item of $1.00 costs taxed against him by reason of the provisions of an Act of the Forty-Seventh Legislature, known as House Bill 569, providing that there shall be taxed, collected and paid as other costs the sum of $1.00 in each case, civil and criminal, with certain named exceptions, but limiting its operation to counties having eight or more district courts and three or more county courts, including county courts at law. Provision is made in said Act for the payment of this item when collected into a fund to be known as the "County Law Library Fund" which is available to be used for certain costs and expenses in acquiring, maintaining and operating a law library available to the judges of the courts and to the attorneys of litigants in the courts. The constitutionality of this law is under attack.

The burden of the briefs and arguments of both sides to this appeal consists of discussions of conflicting decisions in other jurisdictions on the subject of whether or not such charge can be legitimately considered to be proper "costs" in the trial of a case.

The reasoning in both lines of decisions appeal to us to be more or less based upon an arbitrary conclusion and for that reason are not quoted. On one side the courts take the view that the cost may be taxed as a proper item because the money is used in the establishment and maintenance of a law library which, it is stated, is a legitimate charge on the litigants. We find ourselves unable to accept that view. Such reasoning would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an

item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend. Many other illustrations might be used appropriately to show the fallacy of such contention and the inevitable results that litigation in the courts would be prohibitive. We, therefore, conclude, as several states have, that the tax imposed by the bill is not and cannot be logically considered a proper item of cost in litigation, particularly in criminal cases.

We have also concluded that the Act of the Legislature under which the item of cost is taxed is unconstitutional as being a local or special law passed in contravention of Section 56 of Article 3 of the Constitution of the State of Texas and sustain the appellant's contention on this ground. Inasmuch as the law here under consideration is based upon the number of courts in a county, we may take judicial knowledge that it applies only to Dallas and Harris Counties, while other counties similarly situated, such as Tarrant, Bexar and probably McLennan, El Paso, Galveston and Jefferson, are not included because they do not have the prescribed number of courts. If the Act applies logically and reasonably to a section of the State demanding the legislation and is fitted to all of that portion logically coming within the purposes involved, then it might not be obnoxious to such provisions of the Constitution. If it is an arbitrary classification of counties designed for the purpose of applying to one or more counties which the Legislature has in mind, then, under the holdings of this Court and of the Supreme Court of Texas, we think that it is void.

It will be enlightening if we look into the history of the legislation dealing with the subject before us for the purpose of determining the intention of the Legislature in this respect. In so doing, however, we disclaim any intention to pass on any question which may not be before us and which does not relate alone to the Act under consideration.

Articles 1697 to 1702 (Acts of the First Called Session, 1921) authorize the establishment of law libraries in counties having a city of 160,000 population, said libraries to be financed by appropriations from the general county fund. (Note that this will also include both Harris and Dallas Counties, and that the Act in question may be considered as an amendment or modification of the Act of 1921.)

Article 1702a (Acts of the Forty Second Legislature, 1931)

authorizes the establishment of law libraries in counties having eight or more district courts and four or more county courts, to be financed by $1.00 fee taxed as costs in civil and criminal cases filed in such courts. (This, likewise, would apply to Harris and Dallas Counties.)

Article 1702b (Acts of the Forty-fifth Legislature, 1937) authorizes the establishment of law libraries in counties having three or more district courts, one of which sits and has jurisdiction of not less than two other counties, none having more than four terms a year, such library to be financed by $1.00 fee taxed as costs in civil and criminal cases.

Article 1702b-1 (Acts of the Forty-sixth Legislature, 1939,) authorizes the establishment of law libraries in counties having an area of not less than 1130 nor more than 1500 square miles, a population of not less than 11,300 nor more than 12,500, and a county seat of not less than 2200 nor more than 3000, such library to be financed by $1.00 fee taxed as costs in civil and criminal cases.

Article 1702b-2 (Acts of the Forty-Sixth Legislature, 1939, separate bill to the foregoing) authorizes the establishment of a county law library in counties having a population of not less than 50,000 nor more than 78,000, provided there is not situated in such county a Court of Civil Appeals, said library to be financed by taxing $1.00 fee as costs in civil and criminal cases.

Article 1702c, (Acts of the Firty-sixth Legislature, 1939, in a separate bill) authorizes the establishment of a county law library in counties having a population between 53,500 and 57,000, said library to be financed by a fee of $1.00 taxed as costs in civil and criminal cases.

These Acts preceded the enactment under consideration in this appeal and form a part of the history of such legislation and may, therefore, be considered in determining the purpose of it. We are then brought to a consideration of whether or not there is any logical relationship between the conditions prescribed and the purpose to be served, which is one of the points of attack by this appeal.

In the recent case of Miller, et al, v. El Paso County, 150 S. W. (2d) 1000, Chief Justice Alexander has very logically and conclusively treated this subject of a local law in all of its

necessary phases. Following Leonard v. Road Maintenance District, 61 S. W. (2d) 70, an Arkansas case, the opinion quotes with approval the rule which appeals to us as being satisfactory for the adoption of classifications fitted to the purposes which the framers of our Constitution had in mind, and it is said that classifications cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstance of the counties or municipalities placed in the different classes; that there must be some reasonable relation between their situation and the purposes and objects to be obtained; that there must be something which in some reasonable degree may account for the establishment of the classes. Following the reasoning in the Miller case and the authorities there cited, we have concluded that there exists no legitimate grounds for the classification sought in the Act under consideration. The number of district and county courts in a county bears no reasonable and logical relationship whatever to the question of a need for a library and the need for a change of method of financing one. As observed, the case before us is different to the others in that it takes all counties having eight or more district courts and three or more county courts, giving rise to a possibility that it may include a greater number. We are impressed still that this is an arbitrary selection of numbers without any apparent reason therefor, other than to fit the legislation to the county desiring it and to which it was intended to apply. The need of a law library for one judge, or three, is just as great as the need could be where there are eight associated in the common purpose of properly disposing of the cases on the docket of a county. There could be no discoverable difference in the situation of a county having eight district courts and only one county court to that here described and, yet, the law would apply only to and include it. The same would be true if the county had nine district courts and two county courts. Certainly, as relates to the litigant, there is just as much need that his cases be impartially and efficiently considered where the county has but one court as if it had eight. There is just as much need for a speedy disposition of cases. It might be observed as a matter of common knowledge that there is a better chance for extensive research in available libraries in larger cities than there is in smaller ones.

We repeat the conclusion that the history of legislation on the subject reveals that the Legislature itself has recognized that it is not the population and not the number of courts which create a real and substantial relationship between the question

of need and the attainment of a county law library, but there is here presented one of the various devices arbitarily resorted to for the purpose of giving effect to a classification suitable to the ambitions of the two counties to which it applies. There is nothing in the Act before us to show a different purpose to that which has actuated the Legislature in previous legislation on the subject where different measuring sticks were applied.

Briefly as it has been possible to do so, we have referred to authorities sufficiently treating the subject under the Texas Constitution to impress one with the effect of the legislation, and we cannot pass without emphasizing the importance of such provisions. History of legislation reveals to us a very early practice, having a persistent accelerated tendency, against which the framers of the Constitution were, undoubtedly, endeavoring to provide an insurmountable barrier in Section 56, Article 3 of our Constitution. The trading and trafficing in the passing of local and special laws resulting in special privileges and immunities may be viewed as one of the danger elements in all legislative bodies which consists of representatives from varied districts not affected always in all matters by the things which the other may do or not do. Desirable as it is to grant the greatest possible freedom to all municipalities in matters of local government, it is also dangerous to segregate them and liberalize the privileges on those things which must be just, equal and uniform throughout the domain. The framers of our Constitution so viewed it and so provided. The Act before us is unconstitutional as being a local law not intrusted to the judgment and discretion of our Legislature.

Appellant's contention must be sustained and the Act held to be unconstitutional on still another ground. In Ex parte Mann, 46 S. W. 828, this Court, consistent with all other pronouncements on the subject, has adhered to the view that costs in criminal cases are assessed as a part of the punishment for the commission of the offense charged. This being true, a law that fixes a greater punishment in one county than in other counties for the violation of a state law cannot be upheld and is in contravention of constitutional inhibitions, both State and Federal.

In Ex parte Sizemore, 8 S. W. (2d) 134, the question is ably discussed in an opinion by Judge Martin and approved as the opinion of this court. Smith County had passed a special road law by which it allowed only the sum of fifty cents per

day to be applied for the payment of fines and costs imposed in misdemeanor cases in said county, while, by general law as applied to other counties, an allowance of $3.00 per day would be given under the same conditions to parties who had to serve them out in jail. The opinion holds that such legislation fails to accord equal rights and equal protection of the law and contrary to the due course of the "law of the land." We here re-affirm and adopt the reasoning and conclusion in the Sizemore case and believe it to be applicable to the question before us insofar as it seeks to attach a greater penalty for the violation of a provision of the Penal Code for some counties than is applied generally throughout the State.

In Ex parte Ferguson, 132 S. W. (2d) 408, this court again adopted a commisisoner's opinion holding that laws which provide allowances for different amounts daily as credits on fines and costs for different counties according to their population to be unconstitutional as not giving equal protection under the law to all citizens of the State as provided by Article 1, Section 19, of the State Constitution and under the Fourteenth Amendment to the Federal Constitution. Thus, we think that any law which makes the punishment for an offense in one or more counties greater than the punishment of other counties for the same offense is void as in contravention of the provisions of the Constitution above referred to.

The judgment of the County Court remanding appellant is affirmed with instructions to re-tax the costs so as to eliminate the $1.00 for law library fee and, upon the satisfaction of which in the manner provided by law, the relator will be discharged.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The Act of the Forty-seventh Legislature (House Bill 569) authorized to be taxed as an item of costs in each case, both civil and criminal, the sum of $1.00 for a Law Library Fund. Under the terms of the bill it is operative in only two counties in the State.

The exact question before us is whether said item of $1.00 may be taxed in a *criminal* case in Harris County.

It is urged that one phase of our original opinion, in effect,

holds that such item of costs could not properly be taxed in a civil suit. If such be the effect of our opinion it is purely incidental. We are interested only in so far as the law in question seeks to authorize the taxing of such item of costs in a criminal case in Harris County. We regard it as unnecessary and improper to express any opinion as to such item of costs in civil cases in such county. That question should be decided by courts which exercise jurisdiction in civil cases. We disclaim any purpose to encroach or attempt to encroach on the prerogatives of the civil courts.

We remain firmly convinced: (a) That the item of $1.00 taxed as costs for the Law Library Fund is neither necessary nor incidental to the trial of a criminal case, and that it is not a legitimate item to be so taxed, (b) that to so tax against a defendant in a criminal case in Harris County, and not tax it in other counties where a defendant was convicted of the same offense would be a discrimination which the law does not recognize nor tolerate.

The motion for rehearing is overruled.