**Opinion issued September 29, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00647-CR

———————————

**CARLTON CHARLES PENRIGHT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1247950**

---

## O P I N I O N

The State indicted Carlton Charles Penright on the charge of aggravated sexual assault, and a jury found him guilty of the lesser offense of sexual assault. The jury sentenced Penright to 15 years in prison, and the trial court's judgment

assessed court costs in the amount of $534. The trial court later entered a judgment nunc pro tunc reducing the amount of costs assessed to $484, which includes a $133 consolidated court cost authorized by Local Government Code section 133.102 and a $15 Sheriff's fee. In three issues, Penright contends that (1) the provision of the Local Government Code that authorizes the assessment of the $133 consolidated court cost is unconstitutional, (2) there is insufficient evidence to support the assessment of the $15 Sheriff's fee, and (3) the trial court abused its discretion by setting but then failing to hold a hearing on Penright's motion for new trial and motion in arrest of judgment. We affirm.

### Constitutionality of Local Government Code Section 133.102

According to Penright, the $133 consolidated court cost authorized by Local Government Code section 133.102 violates the separation of powers clause of the Texas Constitution because it is a "tax" collected by the judiciary to benefit accounts that are neither necessary nor incidental to the trial of a criminal case. *See* TEX. LOC. GOV'T CODE ANN. § 133.102 (West Supp. 2014).

### A. Standard of Review

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015). The party challenging the statute bears the burden of establishing the statute's unconstitutionality. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App.

2

2013).  To successfully mount a facial challenge to a statute, that party must establish that no set of circumstances exists under which that statute would be valid.  *Peraza v. State*, Nos. PD-0100-15 & PD-0101-15, -- S.W.3d --, 2015 WL 3988926, at *4 (Tex. Crim. App. July 1, 2015); *see Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid.").

When reviewing a constitutional challenge, we presume that the statute is valid and that the legislature was "neither unreasonable nor arbitrary in enacting it."  *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see Rosseau*, 396 S.W.3d at 557; *see also State ex. rel. Lykos v. Fine*, 330 S.W.3d 904, 908–9 (Tex. Crim. App. 2011) (same).  A reviewing court must make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is shown.  *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

## B. Applicable Law

Section 133.102(a)(1) of the Texas Local Government Code mandates that "[a] person convicted of an offense shall pay as a court cost, in addition to all other costs: $133 on conviction of a felony."  TEX. LOC. GOV'T CODE ANN.

§ 133.102(a)(1).  The Local Government Code requires the comptroller to allocate the proceeds collected among the following fourteen accounts and funds:

(1)      abused children's counseling;

(2)      crime stoppers assistance;

(3)      breath alcohol testing;

(4)      Bill Blackwood Law Enforcement Management Institute;

(5)      law enforcement officers standards and education;

(6)      comprehensive rehabilitation;

(7)      law enforcement and custodial officer supplemental retirement fund;[1]

(8)      criminal justice planning;

(9)      an account in the state treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A & M University;

(10)      compensation to victims of crime fund;

(11)      emergency radio infrastructure account;

(12)      judicial and court personnel training fund;

---

[1]  Effective September 1, 2013, subsection (7) was amended from "operator's and chauffeur's license" to "law enforcement and custodial officer supplemental retirement fund."  *See* Act of May 29, 2011, 82nd Leg., R.S., ch. 1249, § 13(b), 2011 Tex. Gen. Laws 3349, 3353.  Although Penright's court costs were imposed on June 28, 2012, because he did not pay them before September 1, 2013, the distribution will be governed by now-effective section 133.102(e)(7).

(13)     an account in the state treasury to be used for the establishment and operation of the Correctional Management Institute of Texas and Criminal Justice Center Account; and

(14)     fair defense account.

*See* TEX. LOCAL GOV'T CODE ANN. § 133.102(e).

## C. Analysis

Penright urges us to declare section 133.102(a)(1) facially unconstitutional because, Penright argues, it requires the judicial branch to collect a tax, which is a power that the separation of powers clause reserves solely to the executive branch. Penright contends that the allocation of proceeds collected under section 133.102(a)(1) to twelve of the fourteen enumerated programs is contrary to *Ex parte Carson*, 159 S.W.2d 126 (Tex. Crim. App. 1942), because these 12 programs are "neither necessary nor incidental to the trial of a criminal case."[2]

In *Ex parte Carson*, Carson challenged the constitutionality of a statute authorizing the assessment of a $1 fee to fund law libraries. The fee was assessed in civil and criminal cases, but only in counties having more than a certain number of district and county courts. *Id.* at 127.   The Court of Criminal Appeals concluded that "the tax imposed by the bill is not and cannot be logically considered a proper item of cost in litigation, particularly in criminal cases." *Id.* at

---

[2]     Penright does not challenge the constitutionality of two of the programs enumerated in section 133.102: judicial and court personnel training fund and fair defense system.  *See* TEX. LOCAL GOV'T CODE ANN. § 133.102(e)(12), (14). Because Penright concedes their constitutionality, we do not address them further.

5

127. It held that (1) the $1 cost was "neither necessary nor incidental to the trial of a criminal case [and thus was] not a legitimate item to be so taxed" against a criminal defendant; (2) the statute was a local or special law, which the state legislature was not authorized to enact; and (3) collection of this cost only in certain counties was discriminatory. *Id.* at 127–30.

The Court of Criminal Appeals recently rejected a *Carson*-based facial constitutional challenge in an analogous case. *See Peraza v. State*, Nos. PD-0100-15 & PD-0101-15, -- S.W.3d --, 2015 WL 3988926, at *6–7 (Tex. Crim. App. July 1, 2015). *Peraza* involved a facial constitutional challenge to Article 102.020 of the Texas Code of Criminal Procedure, which required trial courts to assess a $250 DNA record fee on conviction of specified offenses. *Id*. at *6–7. The *Peraza* Court expressly rejected *Carson*'s holding that court costs must be "necessary" or "incidental" to the trial of a criminal case in order to pass constitutional muster:

> if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause.

*Id.* at *7. The *Peraza* court explained that a legitimate criminal justice purpose is one that "relates to the administration of our criminal justice system." *Id.* It added that the question of whether a criminal justice purpose is legitimate must be considered on a "statute-by-statute/case-by-case basis." *Id.* Thus, after *Peraza*, the

6

question we consider is not whether the funds enumerated in section 133.102(e) are necessary or incidental to the trial of a criminal case, but, rather, whether those funds relate to the administration of our criminal justice system. *Id*.

In determining whether Peraza met his burden to demonstrate that section 102.020 could not operate constitutionally under any circumstance, the *Peraza* court considered the uses to which funds collected under the statute would be put. *Id*. (considering "statutorily provided for" applications and noting that it would be improper to evaluate constitutionality by "theorizing where the funds collected . . . might be spent"). For example, with respect to the 65% of the DNA record fee deposited to the credit of the criminal justice planning account, the *Peraza* court concluded that the statute passed constitutional muster because the criminal justice planning account is statutorily required to reimburse monies spent collecting DNA specimens from offenders charged with certain offenses, including aggravated sexual assault of a child under 14, the offense for which Peraza was convicted. *Id*. at *7–8. Thus, the Court concluded that the DNA fee was constitutional because the funds collected are allocated by statute to a purpose that is related to the administration of our criminal justice system. *Id*. at *8.

Applying the analysis set forth in *Peraza* to the statute Penright challenges here leads us to conclude that the consolidated court cost authorized by section 133.102(e) is likewise constitutional. Several interconnected Texas statutes dictate

7

the manner in which the vast majority of the proceeds collected under section 133.012(a) are to be expended:

- Section 133.102(e)(2) directs the comptroller to allocate .2581% of the proceeds received to "crime stoppers assistance." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(2). These proceeds are appropriated to the Criminal Justice Division of the Governor's Office, which distributes 90% of the proceeds to crime stoppers organizations and may use up to 10% of the funds for the operation of the toll-free telephone service in areas of Texas not served by a crime stoppers organization for reporting to the council information about criminal acts. *See* TEX. CODE CRIM. PROC. ANN. art. 102.013(a) (West 2006); TEX. GOV'T CODE ANN. § 414.012 (West 2012).

- Section 133.102(e)(3) directs the comptroller to allocate .5507% of the proceeds received to "breath alcohol testing." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(3). These proceeds may be used by counties that maintain a certified breath alcohol testing program but do not use the services of a certified technical supervisor employed by the Department of Public Safety to defray the costs of maintaining and supporting a certified breath alcohol testing program, and it may be used by the Department in the implementation, administration, and maintenance of the statewide certified breath alcohol testing program. *See* TEX. CODE CRIM. PROC. ANN. art. 102.016 (West Supp. 2014).

- Section 133.102(e)(4) directs the comptroller to allocate 2.1683% of the proceeds received to the "Bill Blackwood Law Enforcement Management Institute." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(4). These proceeds are used to pay for the cost of Texas residents' participation in the Institute's law enforcement management training programs. TEX. EDUC. CODE ANN. § 96.64(a), (c) (West 2002).

- Section 133.102(e)(5) directs the comptroller to allocate 5.0034% of the proceeds received to "law enforcement officers standards and education." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(5). Two-thirds of these proceeds may be used "only to pay expenses related to continuing education" for law enforcement officers licensed under Chapter 1701 of the Occupations Code, and the remaining third may be used only to pay related administrative expenses. TEX. LOCAL GOV'T CODE ANN. § 133.102(f).

- Section 133.102(e)(6) directs the comptroller to allocate 9.8218% of the proceeds received to "comprehensive rehabilitation." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(6). These proceeds may be used only to provide rehabilitation services directly or through public resources to individuals determined by the department to be eligible for the services under a vocational rehabilitation program or other program established to provide rehabilitation services, as described in Human Resources Code section 111.052. TEX. HUM. RES. CODE ANN. §§ 111.052, 111.060 (West 2013).

- Section 133.102(e)(7) directs the comptroller to allocate 11.1426% of the proceeds received to the "law enforcement and custodial officer supplemental retirement fund." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(7). These funds may be used only to pay supplemental retirement and death benefits to law enforcement and custodial officers and to pay for administration of the fund. TEX. GOV'T CODE ANN. § 815.317(b) (West Supp. 2014).[3]

- Section 133.102(e)(8) directs the comptroller to allocate 12.5537% of the proceeds received to "criminal justice planning." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(8). These funds are to be used for state and local criminal justice projects which aim to reduce crime and improve the criminal and juvenile justice systems, and for other court-related purposes. TEX. CODE OF CRIMINAL PROC. 102.056(a), (b) (West Supp. 2014).

- Section 133.102(e)(9) directs the comptroller to allocate 1.2090% of the proceeds received to "an account in the State treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A&M University." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(9). The center may conduct and evaluate research relating to juvenile justice crime and delinquency and provide a setting for educational programs relating to juvenile crime and

---

[3] Before September 1, 2013, this 11.1426% was directed to the Operators and Chauffeurs License Fund which was administered by the Department of Public Safety. *See* Act of May 29, 2011, 82nd Leg., R.S., ch. 1249, § 13(b), 2011 Tex. Gen. Laws 3349, 3353. Undedicated and unobligated monies in this fund could be appropriated "only to the criminal justice division for the purpose of awarding grants" under the Prosecution of Border Crime Grant Program. *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 1106, § 1, 2011 Tex. Gen. Laws 2854, 2855 (enacting now-repealed TEX. GOV'T CODE ANN. § 772.0071(d)).

delinquency, including educational training for criminal justice and social service professionals. TEX. EDUC. CODE ANN. § 87.105(d) (West 2002).

- Section 133.102(e)(10) directs the comptroller to allocate 37.6338% of the proceeds received to the "compensation to victims of crime fund." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(10). These funds may be used for the payment of compensation to claimants or victims, to reimburse a law enforcement agency for the reasonable costs of a sexual assault medical examination, to administer the associate judge program for child protection cases, and for victim-related services or assistance. TEX. CODE CRIM. PROC. ANN. arts. 56.54 (West Supp. 2014), 56.542 (West 2006).

- Section 133.102(e)(11) directs the comptroller to allocate 5.5904% of the proceeds received to the "emergency radio infrastructure account." These funds may only (1) be used for planning, development, provision, enhancement or ongoing maintenance of interoperable statewide emergency radio infrastructure, (2) be used in accordance with the statewide integrated public safety radio communications plan, (3) be used for the development of a regional or state interoperable radio communication system, (4) be distributed as grants by the department to regional governments that have entered into interlocal agreements and state agencies requiring emergency radio infrastructure, or (5) be used for other public safety purposes. TEX. GOV'T CODE ANN. § 411.402 (West 2012).

- Section 133.102(e)(13) directs the comptroller to allocate 1.2090% of the proceeds received to "an account in the state treasury to be used for the establishment and operation of the Correctional Management Institute of Texas and Criminal Justice Center Account." These funds are used for the training of criminal justice professionals. TEX. EDUC. CODE ANN. § 96.645(b) (West Supp. 2014).

These interconnected statutes direct the comptroller to allocate 99.99% of the proceeds collected under section 133.102(e) to uses that relate to the administration of our criminal justice system and are therefore legitimate criminal justice purposes under *Peraza*. *See Peraza*, 2015 WL 3988926, at *7–8. Although no current statute mandates how the .0088% of the proceeds allocated to abused

10

children's counseling under section 133.102(e)(1) may be spent, abused children's counseling on its face relates to the administration of our criminal justice system by providing resources for victimized children. Thus, Penright has failed to establish that it is not possible for section 133.102(e) to operate constitutionally in any circumstance. *Id.* (appellant failed to meet burden to establish that it was not possible for court cost provision to operate constitutionally in any circumstance where interconnected statutory provisions provided for funds to be expended for legitimate criminal justice purposes); *see also Luquis v. State*, 72 S.W.3d 355, 365 n.26 (Tex. Crim. App. 2002) (we favor constitutional reading over unconstitutional reading when construing statutes.).

In sum, the interconnected statutory provisions providing for the allocation of the funds collected as court costs pursuant to section 133.120 allow and require that the vast majority of the proceeds collected be expended for legitimate criminal justice purposes. *See Peraza*, 2015 WL 3988926, at \*8. We therefore hold that Penright has not met his burden to establish that it is not possible for section 133.102 to operate constitutionally under any circumstance. Accordingly, the trial court did not err in denying Penright's motions in arrest of judgment and for new trial.

We overrule Penright's first issue.

**Sufficient evidence supports the Sheriff's fee**

11

In his second issue, Penright contends that the evidence is insufficient to support the assessment of the Sheriff's fee in the amount of $15 because the record contains no Sheriff's fee record.

According to Penright, article 103.009 of the Texas Code of Criminal Procedure requires the Harris County Sheriff's Department to keep a fee record and, therefore, the appellate record must contain the Sheriff's fee record. *See* TEX. CODE CRIM. PROC. ANN. art. 103.009(a) ("Each clerk of court, county judge, justice of the peace, sheriff, constable, and marshal shall keep a fee record."). But we have previously rejected this argument—the record need not contain a Sheriff's fee record. *See Cardenas v. State*, 403 S.W.3d 377, 386 n.10 (Tex. App.—Houston [1st Dist.] 2013) (rejecting same argument and noting appellant presented no authority that article 103.009 fee record must be filed with trial court to support inclusion of sheriff's fees among costs chargeable to appellant and presented no argument that costs where not legally authorized), *aff'd*, 423 S.W.3d 396 (Tex. Crim. App. 2014).

Here, the clerk's record includes a "J.I.M.S. Cost Bill Assessment," which includes a $5.00 commitment fee, a $5.00 release fee, and a $5.00 fee for making an arrest without a warrant fee—amounting to the $15 Sheriff's fee in the judgment. Penright contends that the J.I.M.S cost bill assessment is not a proper bill of costs because it is a "print out and not the type of record required by the

12

statute." The Court of Criminal Appeals has rejected this argument. *See Johnson v. State*, 423 S.W.3d 385, 391–94 (Tex. Crim. App. 2014).

"[W]e review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost, and traditional *Jackson* evidentiary-sufficiency principles do not apply." *Johnson*, 423 S.W.3d at 390. We review the sufficiency of the evidence supporting the award of costs in the light most favorable to the trial court's judgment. *See Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); *Cardenas*, 403 S.W.3d at 385.

A defendant convicted of a felony offense must pay certain statutorily mandated costs and fees. *See Johnson*, 423 S.W.3d at 389. The record shows that Penright was convicted of a felony in district court, supporting each of the following court costs constituting a Sheriff's fee:

(1) $5.00 for making an arrest without a warrant;[4]

(2) $5.00 as a commitment fee;[5]

(3) $5.00 as a release fee;[6]

---

[4] TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(1) (West Supp. 2014) ("$5 for . . . making an arrest without a warrant").

[5] *Id.* 102.001(a)(6) (West Supp. 2014) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $5 for commitment or release").

[6] *Id.*

These fees total $15.00, the same amount of costs assessed as a Sheriff's fee in this case:

$  5.00 (making arrest without a warrant)
$  5.00 (release fee)
$  5.00 (commitment fee)
_____
$ 15.00

Accordingly, we hold that the evidence was sufficient to support the Sheriff's fee in the amount of $15 assessed in the trial court's judgment. *See Johnson*, 423 S.W.3d at 389, 396.

We overrule Penright's second issue.

**The trial court held a hearing on Penright's motion for new trial**

In his third issue, Penright asserts that the trial court abused its discretion in refusing to conduct a hearing on his motion for new trial and motion in arrest of judgment. The record reflects that the trial court had scheduled a hearing on the motion for new trial but was unable to conduct the hearing as anticipated due to scheduling conflicts. As a result, Penright's motion for new trial was overruled by operation of law.

We abated this appeal and ordered the trial court to hold a hearing on the motion for new trial. The trial court held a hearing, and we have considered the record from that hearing on appeal. Therefore Penright's third issue is moot. *See Highfill v. State*, No. 03-00-00126-CR, 2001 WL 520978, at *10 (Tex. App.—Austin May 17, 2001, no pet.) (not designated for publication) (holding appellant's

14

issue was rendered moot because appellant was given the opportunity to make a record in support of his motion for new trial and appellate court considered that record in disposing of only issue raised in the motion for new trial).

We overrule Penright's third issue.

## Conclusion

We affirm the judgment of the trial court. All pending motions are dismissed as moot.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Publish — TEX. R. APP. P. 47.2(b).