

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-0856-19 & PD-0857-19

### BRYANT EDWARD DULIN, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### BURNET COUNTY

YEARY, J., filed a dissenting opinion in which KEEL, SLAUGHTER, and MCCLURE, JJ., joined.

### DISSENTING OPINION

In two indictments, Appellant was charged with, and ultimately convicted of, a dozen felony offenses involving sexual abuse against a child. In cause number 46489, he was convicted of, among other offenses, indecency with a child,[1] and he was sentenced for that offense to a term of twenty years in the penitentiary and a $5,000 fine. In the judgment of conviction for this indecency with a child offense, he was assessed court costs totaling

---

[1] TEX. PENAL CODE § 21.11 (describing the offense of Indecency with a Child).

$589. In cause number 46491, he was convicted of "super" aggravated sexual assault of a child,[2] for which he was assessed a thirty-five-year prison sentence, a $5,000 fine, and court costs totaling $639. This case involves a challenge to the constitutionality of a portion of the assessed court costs under those cause numbers.[3]

Appellant claimed that $22.50 of the total court costs assessed, in both cause numbers 46489 and 46491, violated separation-of-powers principles under this Court's holding in *Salinas v. State*, 523 S.W.3d 103 (Tex. Crim. App. 2017). The Third Court of Appeals agreed with Appellant and modified the judgment of conviction for each of those two offenses, deleting that amount from each court-cost assessment. *Dulin v. State*, 583 S.W.3d 351 (Tex. App.—Austin 2019).

The court cost at issue in these cases derives from Section 133.103 of the Texas Local Government Code, the so-called "time payment fee." TEX. LOC. GOV'T CODE § 133.103. The relevant portions of that provision read:

(a)  A person convicted for an offense shall pay, in addition to all other costs, a fee of $25 if the person

    (1)  has been convicted of a felony or misdemeanor, and

    (2) pays any part of a fine, court costs, or restitution on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution.

(b) Except as provided by Subsection (c-1), the treasurer shall send 50 percent of the fees collected under this section to the comptroller. The comptroller shall deposit the fees received to the credit of the general revenue fund.

---

[2] TEX. PENAL CODE § 22.021(f) (increasing the minimum term of imprisonment for Aggravated Sexual Assault to 25 years under certain identified circumstances).

[3] No court costs were assessed for any of the remaining ten convictions.

(c)  Except as provided by Subsection (c-1), the treasurer shall deposit 10 percent of the fees collected under this section in the general fund of the county or municipality for the purpose of improving the efficiency of the administration of justice in the county or municipality. The county or municipality shall prioritize the needs of the judicial officer who collected the fees when making expenditures under this subsection and use the money deposited to provide for those needs.

* * *

(d)  The treasurer shall deposit the remainder of the fees collected under this section in the general revenue account of the county or municipality.

Appellant did not challenge that portion of the time payment fee that was apportioned under Section 133.103(c), the ten percent that is deposited in the general fund of the county or municipality for improving the efficiency of the administration of justice for the local judicial officer who collected the fee. TEX. LOC. GOV'T CODE § 133.103(c). But he did challenge the constitutionality of the remaining ninety percent of the time payment fee—those requiring deposit in the general revenue funds of the state (50 percent) and county or municipality (the balance, 40 percent), under Sections 133.103(b) and (d). TEX. LOC. GOV'T CODE § 133.103 (b), (d).

Appellant argued on appeal that, to the extent Section 133.103 mandates the collection of fees for deposit into general revenue funds—funds not specifically tied to any particular cost of administrating the criminal justice system—it constituted a tax rather than a legitimate court cost; and that, as such, it violated the separation-of-powers principle of *Salinas*. Relying on another court of appeals' determination of the same issue, the Austin Court of Appeals agreed, and it struck ninety percent of the time payment fee (or $22.50) from the judgments of conviction for indecency with a child and "super" aggravated sexual

assault of a child. *Dulin*, 583 S.W.3d at 353 (citing *Johnson v. State*, 573 S.W.3d 328, 340 (Tex. App.—Houston [14th Dist.] 2019, pet. pending)).

In three grounds for review, the State Prosecuting Attorney (SPA) now levels three arguments against the court of appeals' judgment. First, the SPA argues that the court of appeals was correct to strike the offending court costs, not because they were unconstitutional, but because they were assessed prematurely, before the terms of Section 133.103(a)(2), which permit the assessment of such costs, had even been satisfied.[4] Remarkably, for this reason the SPA contends that the entire cost ($25) should be struck, not just the ninety-percent portion ($22.50) that the court of appeals struck. Second, and alternatively, the SPA argues that, in *Salinas*, this Court wrongly encroached upon the authority of the coordinate departments of state government by striking down court costs.[5] Third, the SPA argues that the time payment fee represents a legitimate cost of administering criminal justice because it enforces a deadline for the payment of other fees and costs assessed in the judgment of conviction, incentivizes non-indigent convicts to pay them in a timely way, and helps recoup at least some of the cost of executing the judgment

---

[4] The SPA's first ground for review states: "Should an improper and prematurely assessed nonobligatory 'Time Payment Fee' that penalizes the failure to timely pay a court-cost, fee, or restitution be struck?"

[5] The SPA's second ground for review states: "In striking down court-costs and fees, does the judiciary violate separation of powers by infringing on the Legislature's power to enact costs, fees, and the state's budget and the Governor's budget power?" Within this ground for review, the SPA seems to make two discrete arguments: first, that when this Court strikes a legislatively enacted court cost, it impermissibly invades the budgetary prerogative of other governmental departments; and second, that so long as the total amount of court costs assessed do not exceed actual expenditures for the trial of a criminal case, it should not matter how those court costs are dispensed upon collection. I would ultimately resolve this case based upon the second of these arguments embraced within the SPA's second ground for review.

against capable convicts who do not timely comply with its terms.[6] The SPA argues that, for these reasons, we should uphold the time payment fee notwithstanding *Salinas*. We granted all three of the SPA's grounds for review.

## I.

I begin with the SPA's first argument—that the entire time payment fee should simply be struck in its entirety because it was assessed prematurely—because if the SPA is correct about this, it would render the constitutional argument moot.[7] The judgments imposing court costs (including the time payment fees) were entered on June 19, 2018. When the appellate record was prepared for this appeal, the clerk's record did not originally include the bills of cost. Appellant's appeal counsel requested that the clerk's record be supplemented with the bills of cost, which it was in December of 2018. The bills of cost—both of which include the time payment fee in reaching the total amount of court costs assessed in the respective judgments—indicate that the district clerk signed and certified them on June 19, 2018, the same date the judgments were entered. Thus, it does indeed appear from the face of the appellate record that the time payment fees were originally assessed *less* than 31days after the fines and other court costs and fees were assessed in the judgments.

But I do not believe that means the time payment fees must be struck as premature. The fact that the conditions precedent to assessment of the time payment fees did not yet

---

[6] The SPA's third ground for review states: "Is the 'Time Payment Fee' proper because it imposes a time-frame for court-cost and fee payment and disincentivizes late payment and the failure to pay?"

[7] *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) (explaining that Courts should avoid resolving constitutional issues in cases where adjudication of those issues can be avoided).

exist at the time they were assessed in the judgments and included in the bills of cost does not render moot Appellant's present constitutional challenge to a portion of those fees on appeal. Section 133.103(a) of the Texas Local Government Code is a mandatory provision: A convicted person "shall pay" the time payment fee if he has not yet paid the entirety of any fine, restitution, and other courts costs before the 31st day after they are assessed by entry of the judgment of conviction. By the time Appellant challenged the constitutionality of the time payment fee in his brief on appeal, in March of 2019, more than eight months had elapsed from the imposition of those fines and other court costs, and there is nothing in the record from which to suppose he might already have paid them. That he went to the trouble to challenge the constitutionality of the time payment fee statute on appeal suggests that he had not. Even if premature when assessed in the judgments, therefore, the mandatory time payment fees were applicable to Appellant and ripe for challenge on appeal.[8] The court of appeals did not err to conclude otherwise.

---

[8] The SPA also maintains that, despite the mandatory nature of the time payment fee, the trial court might yet have waived payment under the provisions of, for example, Article 43.091 of the Code of Criminal Procedure. *See* SPA's Brief at 7−8 (citing TEX. CODE CRIM. PROC. art. 43.091). Even assuming the trial court could appropriately waive the time payment fee under terms of a provision like Article 43.091, notwithstanding Section 133.103(a)'s mandatory language, nothing in the present appellate record suggests that it did so. Had Appellant been the party to argue that the time payment fee should be struck from the judgment because the trial court later waived it, we would no doubt insist that he produce an appellate record that demonstrated the trial court's waiver. We should expect no less from the State in its effort to strike the time payment fee in the interest of avoiding the separation-of-powers constitutional issue.

The Court holds that the appeal itself "suspends" the 31-day period before which fines, costs, and restitution must be paid, and that this suspension "stops the clock for purposes of the time payment fee." Majority Opinion at 9. It is not clear to me why this means that the *State* should be able to insist that the time payment fee should be struck. Presumably Appellant himself could have argued that the time payment fee on appeal was "premature," and perhaps *he* could have then expected to obtain relief on that basis. But I can see no reason he should not be allowed to choose, instead, to bring a challenge that would nullify the State's ability *ever* to impose such a court cost, even in a timely manner. The Court also seems to suggest that Appellant could still voluntarily choose to pay the assessed fines and costs in a timely way after the appeal, or even voluntarily pay

## II.

I turn next to the SPA's third argument, since a favorable resolution of that claim would also moot the constitutional issue. The SPA argues that the time payment fee constitutes a legitimate reimbursement-type of court cost, of the kind that we held in *Allen* may be assessed without regard to where the money is ultimately funneled or to what purpose it may be used. *See Allen v. State*, 614 S.W.3d 736, 744 (Tex. Crim. App. 2019) ("*Salinas* did not erect a new requirement that all court-cost statutes, including those imposing reimbursement-type costs, must explicitly allocate funds to be expended in the future for legitimate criminal law purposes. *Salinas* applies only to the type of cost that was at issue in that case—a cost imposed to offset future criminal justice expenses."). Section 133.103(a)'s time payment fee, the SPA contends, is more like the direct reimbursement-type of court cost that *Allen* approved of, than the future-criminal-law-purpose court costs at issue in *Salinas*, which must be statutorily allocated to accounts that go to fund legitimate criminal-justice related endeavors. SPA's Brief at 24−26. And in support of this contention, the SPA offers three sub-arguments. First it argues that the time

the time payment fee itself, which would render his constitutional challenge moot. But as I have already observed, nothing suggests that he has done that, and the fact that he challenges the legitimacy of the time payment fee itself on appeal, rather than its timeliness, suggests he has no such intention.

Moreover, if the Court is correct, then the issue of the constitutionality of the time payment fee may never be ripe for decision in the context of a direct appeal, and, as a practical matter, may forever evade review. It is true that an inmate could potentially challenge a post-appeal assessment of the time payment fee under Article 103.008(a) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 103.008(a) (providing a motion practice for "correcting" errors in court costs within a year of the final disposition of the case in which such costs were imposed). But indigent appellants will, in all likelihood, no longer be assisted by appointed appellate counsel for that purpose, and non-indigent appellants cannot reasonably be expected to hire legal counsel to make sophisticated separation of powers arguments in order to avoid $22.50 of court costs.

payment fee "acts as an enforcement mechanism by establishing a reasonable deadline for payment" of any fine, restitution, and other court costs assessed in a criminal judgment of conviction. *Id*. at 24. Second, it argues that the fee "disincentivizes untimely payment and the failure to pay." *Id*. And third, the SPA argues that the fee serves as a sort of flat fee, to compensate the State for the anticipated cost of compelling a non-indigent convict to pay his fines, restitution, and other court costs, in execution of the monetary obligations in the judgment of conviction. *Id*. at 25.

Like every court of appeals to have decided this issue before,[9] I think that, on balance, the time payment fee is marginally more like the anticipatory court costs at issue in *Salinas* than the direct reimbursement court costs in *Allen*. In the ordinary case, by the time the time payment fee is assessed—at least 31 days after the judgment of conviction is entered—we would not expect to find that funds had already been expended in an effort to collect overdue fines, restitution, and other court costs assessed in the judgment. It is not, then, strictly speaking, a direct-reimbursement type of court cost as in *Allen*. Also, most of the anticipatory monies are not channeled to a specific fund dedicated to reimbursing the

---

[9] *See Johnson v. State*, 573 S.W.3d at 340 ("The time payment fee does not in itself reimburse the county or the State for expense incurred in connection with appellant's criminal trial specifically[.]"); *Simmons v. State*, 590 S.W.3d 702, 712 (Tex. App.—Waco 2019, pet. filed) (same); *Kremplewski v. State*, ___ S.W.3d ___, 2019 WL 3720627, at *2 (Tex. App.—Houston [1st Dist.] 2019, pet. filed) (same). *See also Ovalle v. State*, 592 S.W.3d 615, 618 (Tex. App.—Dallas 2020) (following *Johnson*); *Brown v. State*, No. 06-20-00017-CR, 2020 WL 3865736, at *3 (Tex. App.—Texarkana July 9, 2020, no pet. h.) (mem. op., not designated for publication) (same); *Wells v. State*, No. 03-18-00675-CR, 2020 WL 3164972, *5 (Tex. App.—Austin June 4, 2020, pet. filed) (mem. op., not designated for publication) (same); *Townsend v. State*, No. 13-18-00049-CR, 2019 WL 6205470, at *8 (Tex. App.—Corpus Christi Nov. 21. 2019, pet. filed) (mem. op., not designated for publication) (same); *King v. State*, No. 11-17-00179-DR, 2019 WL 3023513, at *5 (Tex. App.—Eastland July 11, 2019, pet. filed) (mem. op., not designated for publication) (same).

State or localities for the actual cost of assuring the execution of judgments. Instead, ninety percent of those funds are deposited in the general revenue accounts of the State, county, and/or municipality's treasuries, and they are presumably made available to those entities for other uses, at least some of which are not necessarily related to any legitimate criminal-justice purposes. I would therefore reject the SPA's assertion that *Salinas* (if it was correctly decided) does not control and turn next to the question of whether *Salinas* was correctly decided.

## III.

The SPA's second argument contends that *Salinas* was wrongly decided, and with that I agree. The very fact that the time payment fee at issue in this case more closely resembles the kind of fees at issue in *Salinas* than those in *Allen*, and that they may therefore be seen to violate separation of powers principles under Article II, Section 1 of the Texas Constitution,[10] actually serves to illustrate that our recent holdings with respect to anticipatory court costs, beginning with *Peraza v. State*, 467 S.W.3d 508 (Tex. Crim. App. 2015), have failed to provide a consistent and workable approach to discerning the constitutionality of court costs. The costs at issue in this case are anticipatory, and therefore, to be considered constitutional under *Peraza* and *Salinas*, the statute that requires their collection must also require their expenditure for "legitimate criminal justice purposes." But the statute at issue here does not do that. These costs are directed to be

---

[10] *See* TEX. CONST. art. II, § 1 ("The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.").

deposited in general revenue accounts. At the same time, they represent a legitimate attempt to collect expenses that will be incurred by the State due to the defendant's failure to timely pay previously imposed costs, and they manifestly do not exceed the actual cost to the State for having to put the defendant through a trial in the first place and obtain and execute a final judgment. We should therefore address our prior decisions up to this point and attempt to discern a more consistent and workable approach to determining the constitutionality of court costs.

In *Peraza*, the Court expanded upon the understanding of appropriate court costs that had been articulated many years before in *Ex parte Carson*, 143 Tex. Cr. R. 493, 159 S.W.2d 126 (1942)—a case in which separation of powers was not an issue—by incorporating a notion that legislation requiring courts to collect certain costs and fees might transform courts into tax collection agents of a sort, which is an exclusive function of the executive department.[11] In *Carson*, the Court had reasoned that, in order to be legitimate, a court cost had to be "necessary and incidental" to the "trial of a criminal case." *Ex parte Carson*, 159 S.W.2d at 130. In *Peraza*, however, the Court said that a court cost did *not* have to be "necessary and incidental" to "the trial of a criminal case." *Peraza*, 467 S.W.3d at 517 ("We therefore reject *Carson*'s requirement that, in order to pass constitutional muster, the statutorily prescribed court cost must be 'necessary' or 'incidental' to the 'trial of a criminal case.'"). Instead, the Court held:

> [I]f the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for

---

[11] *See Allen*, 614 S.W.3d at 742 ("Although *Carson* did not state that its holding was based on separation of powers principles, its standard would later be cited as the 'litmus test' for establishing whether a court cost comported with the separation of powers clause. *See Peraza*, 467 S.W.3d at 517.").

> legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause. A criminal justice purpose is one that relates to the administration of our criminal justice system.

*Id.* at 517–18. Thus, after *Peraza*, the Court's focus shifted from the need to reimburse expenditures made in the trial of a criminal case (which was what the Court was concerned about in *Carson*) to how those reimbursed funds were to be spent going forward. And in *Salinas*, we reiterated:

> What constitutes a legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis. And the answer to that question is determined by what the governing statute says about the intended use of the funds, not whether funds are actually used for a criminal justice purpose.

523 S.W.3d at 107.

In *Allen*, however, we shifted our focus back to whether challenged court costs actually *were* in the nature of reimbursement of expenses incurred as "necessary and incidental" to the trial itself. We held that, because such costs directly repaid the State for expenses actually incurred, it made no difference how the recovered funds were later allocated or expended. *See Allen*, 614 S.W.3d at 745 ("[W]e resolve Appellant's ground for review by holding that reimbursement-based court costs pose no separation of powers problem, regardless of where the funds are directed once received."). *Allen* therefore limited the reach of *Peraza* and *Salinas*'s "legitimate criminal justice purposes" requirement to court costs of the anticipatory type (*i.e.*, "those that are to be expended to offset future criminal justice costs[,]" *id.* at 744), and not costs that were for recouping already-realized trial court expenditures.

But why should *Allen* not apply across the board, so long as court costs do not exceed actual expenses? It is clear enough from our opinions—if not from *Carson*, then certainly from *Allen* itself—that the Judicial Department may properly be called upon to recover the actual expenditures as costs levied in a judgment of conviction. And the actual expenditures required of the State in the trial of a criminal case to judgment, and in execution of the judgment, are not insignificant in amount.

*Peraza* extended the scope of permissible Judicial Department court cost assessments to include fees not directly tied to particularly identifiable trial court expenditures—so long as they were statutorily funneled to serve "legitimate criminal law purposes." But the SPA now argues—and I agree—that so long as these so-called "anticipatory" court costs do not exceed the actual cost of litigation of the defendant's criminal case, it should not matter how the funds are allocated to be spent, any more than it matters how direct-reimbursement type of court costs are later allocated to be spent.[12] And it should not make a difference that the statute imposing the court cost does not identify a specific and discrete expenditure for which it is authorizing reimbursement.[13]

---

[12] This parallels the State's so-called "money is fungible" argument that Judge Keel acknowledged and advocated in her dissenting opinion in *Allen*. *See* 614 S.W.3d at 749 (Keel, J., dissenting) ("In any event, *Peraza* and *Salinas* depend on a fiction. As the State Prosecuting Attorney documents, the State of Texas spends more on the criminal justice system than it collects in court costs. And as the district attorney observes, money is fungible. Thus, any court cost directed to the general revenue fund is directed to a criminal justice purpose."). The Court did not have to reach that argument in *Allen*, but the SPA makes it again here.

[13] Indeed, this Court's decision in *Peraza* made a valuable jurisprudential contribution by untethering court costs from the discretely identifiable expenditures of a particular trial, and by recognizing that the collection of a court cost need not be "necessary" or even "incidental" to some specific expense incurred during trial before it may be said to constitute "the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system." 467 S.W.3d at 517.

Prior to *Peraza*, it had never been thought, by this or any other court in Texas, that statutory authorization for the recovery of the actual cost of litigating an accused's guilt constituted a violation of Article II, Section 1, of our state Constitution. And this was for good reason. By the time the Constitution of 1876 carried forward Article II, Section 1, from our previous state constitutions, the Legislature had long been imposing substantial statutory court costs upon convicted defendants.[14] This suggests that the framers of that constitution would not have endorsed the idea that legislative authorization of court costs—even quite substantial court costs—violated our separation of powers provision.

I would now hold that, when the total court costs authorized by statute and appropriately imposed in a given case is not so extravagant as to plainly exceed the actual cost to the State of Texas of litigating that case to a final conviction and executing the judgment, there is no usurpation of a power properly attached to a different department of

---

[14] The separation of powers clause of the Texas Constitution of 1845 was practically identical to current Article II, Section 1, with only incidental differences in capitalization and punctuation. TEX. CONST. OF 1845, Art. II, § 1. Also, Part V of the 1856 Texas Code of Criminal Procedure ("Of Costs in Criminal Actions") contained a vast array of court fees and costs, many if not most of which were ultimately to be "taxed" to convicted defendants, even if originally paid by the State or county. TEX. CODE CRIM. PROC. (1856), Part V. After Article II, Section 1's separation-of-powers principle was carried over into the present state constitution, in 1876, these court cost provisions were re-codified, largely intact, in Title XV of the 1879 Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. (1879), Title XV.

Chapter One of Title XV of the 1879 Code of Criminal Procedure is entitled "Taxation of Costs." Article 1042 of that Chapter provided that nothing is to be "taxed" as a cost of court "that is not expressly provided by law." Chapter Two then provided for a number of costs and fees that were to be paid by the State initially but then "charged" to a convicted felon and subsequently paid back into the State treasury when collected (Article 1061). These included payment of "fees" to the district or county attorney who prosecuted the case (Article 1052), payment to the sheriff or constable for various services including executing arrest warrants, summoning, attaching or transporting witnesses, and summoning juries (Article 1054), and payment to the district clerk for certain services (Article 1056). Fees to be directly "taxed" to a convicted felon under Chapter Four of Title XV included a flat jury fee (Article 1100) and reimbursement of costs accrued by attending witnesses (Article 1108).

government, regardless of how the recovered funds are statutorily apportioned. And consequently, only to the extent that they are inconsistent with that holding, I would now disavow *Peraza* and *Salinas*.[15]

Here, the overall court costs ($589 and $639) were quite modest relative to what was undoubtedly the actual cost of litigating the dozen felony charges brought against Appellant—and even compared to the two (out of that total of a dozen) cases for which any court costs at all were actually imposed. The inclusion of the $22.50 in the court costs assessed in these cases, representing that portion of the time payment fee that Section 133.103, Subsections (b) and (d), of the Texas Local Government Code allocated to general revenue funds, did not violate Article II, Section 1 of the Texas Constitution.

To the extent that it modified the judgment of conviction in this case to delete the assessment of a portion of the time payment fee, I would reverse the judgment of the court of appeals.

FILED:                             March 31, 2021
PUBLISH

---

[15] *Stare decisis* "is least applicable in constitutional adjudication, because correction through legislative action is practically impossible in those cases." *Ex parte Lewis*, 219 S.W.3d 335, 376 (Tex. Crim. App. 2007) (Cochran, J., concurring) (citing *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)) (internal quotation marks omitted). *See also Agostini v. Felton*, 521 U.S. 203, 235 (1997) ("[*stare decisis*] is at its weakest when we interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions.").